HARRY GANGER, PLAINTIFF-RESPONDENT, v. ARTHUR
W. MOFFETT, DEFENDANT-APPELLANT.

Argued September 24, 1951—Decided October 22, 1951.

74

*Mr. Irvin M. Lichtenstein* argued the cause for respondent (*Mr. S. Arthur Levy* on the brief; *Mr. Milton C. Nurock,* attorney).

*Mr. Barney B. Brown* argued the cause for appellant.

. The opinion of the court was delivered by

CASE, J. This is a money action for recovery of consideration in accordance with the terms of an assignment of the vendee's rights under a contract for the sale and purchase of real estate. The jury awarded plaintiff a verdict for $1,200. The Appellate Division affirmed on appeal. Because there was a minority dissent defendant had, and has exercised, the right of appeal. We affirm for the reasons stated by Judge Freund in the opinion written for the majority of the court below and reported in 12 *N. J. Super.*, at *page* 186, so far as concerns the issues there discussed.

The further theory is now suggested that the plaintiff may not prevail because in availing himself of his right to sue the vendors for the breach of their contract to convey he deprived his assignor of a right of subrogation. The present study does not arise on a demand for subrogation. There is not and never has been such a demand. The question arises because Moffett, appellant herein, charged that respondent Ganger made an election of remedies which was said to be inconsistent with the present suit, and the suggestion is that Ganger did so elect, and is bound by that election, because, as the argument is, in so doing he deprived Moffett of the opportunity to take back the sale contract and to prosecute the vendee's rights thereunder against the vendors for his own benefit. It is our view that Moffett was not entitled to subrogation.

Moffett was the contracting purchaser under an agreement for the purchase and sale of real estate. He paid $100 on account of the purchase price. The only other signer was A. M. Ellis, one of the owners, who undertook to bind himself and his co-owners to make conveyance by a marketable title, free and clear of all encumbrances except as therein stated. Moffett assigned his rights under that contract to Ganger by an instrument which did nothing but assign, with this notable exception—it contained a special undertaking that if the owners refused to sign the deed Moffett would return to Ganger the $1,200 paid to him by the latter as

consideration for the assignment. It is factually established that the owners did refuse to sign; therefore the condition of the obligation became actual. Ganger suffered other damages from the breach and incorporated some of them in the complaint against Moffett, but he had no ground of recovery from Moffett for them. No other item went to the jury and the verdict against Moffett was for the flat $1,200 without interest.

The obligations of a vendor to an assignee flow not from the instrument of assignment but from the contract of sale. Conversely, the obligations of an assignor to an assignee flow not from the contract of sale but from the assignment. Could Ganger have recovered from the vendors the $1,200 paid Moffett? On settled principles which will presently be stated he could not, except the $100 paid by Moffett at the execution of the sale contract. Could he have recovered from Moffett for the cost of his abstract of title and his survey or for the loss of his bargain had there been such loss? He could not; his sole right of recovery against Moffett was on the latter's special undertaking to pay back the $1,200. Thus, at the threshold, the entire theory of an election of remedies and whatever incidents follow therefrom are ruled out because the essence of the doctrine of election of remedies is the conscious choice, with full knowledge of the facts, of one of two or more *inconsistent* remedies. *Levy v. Massachusetts Accident Co.,* 127 N. J. Eq. 49 (*E. & A.* 1939). It was clearly stated on behalf of plaintiff during the argument on the motion in the trial court that the $100 deposit was a recoverable item against the vendors. Perhaps defendant could have saved that sum from the verdict by appropriate procedure, but he chose to press for and to depend upon his motion for a dismissal of the entire cause of action. Manifestly he was not entitled to a dismissal because the complaint was clearly good to the extent of $1,100.

The Chancery suit, alleged to be inconsistent with the present action, was brought by Ganger against the owners named in the contract of sale to compel a specific perform-

ance of the contract or, in the alternative, to obtain a money judgment. It does not appear from anything in the appendices, either in the complaint in the Chancery action or the complaint, answer and proofs in the present cause, that the failure of the vendors to convey was willful or for reasons within their control. The position taken by Moffett in his fifth separate defense appended to his answer in the present action was that the vendors had never refused to sign a deed and that they had at all times been and were still able, willing and ready to sign the deed upon payment of the consideration called for by the contract; and that was in part his position at the trial. But when it came to the question of the prosecution of the Chancery action his proofs were not that Ellis, the only one of the owners to sign the contract, had authority to bind his co-owners; the drift of his testimony was that Ellis "signed for the others and if they didn't follow through he was responsible for them signing, or paying damages" and that if Ellis "couldn't deliver on an agreement he signed he was certainly responsible to him (Ganger) for any damages he may suffer." Moffett further testified that "I urged him (Ganger) to start a suit against Mr. Ellis for two or three years, and I told him that unless he did he couldn't look to me for any damages because Mr. Ellis was the man in default and he was a responsible man, I always understood him to be worth a million * * *." We find nothing to encourage a belief that Moffett sought or had faith in a suit to compel the remaining owners to sign a deed. His insistence was that Ganger could, and should, have got full damages from Ellis.

■■ Passing to the items of recoverable damage, the common law rule, where a vendor has contracted to convey real estate free of encumbrances and is unable to convey because of a defective title and the vendee has paid a part of the purchase money, is that the vendee is restricted to the recovery of deposit money and interest. *Gerbert v. Trustees*, 59 *N. J. L.* 160 (*E. & A.* 1896); *Mangonaro v. Kare*, 84 *N. J. L.* 408 (*E. & A.* 1913); *Rabinowitz v. Debow*, 104

*N. J. L.* 62 (*E. & A.* 1927). *R. S.* 2:45–1 allows also the reasonable expenses of examining the title and making survey unless the contract provides otherwise, and adds that the statute shall not limit the recovery where the purchaser seeks to recover for the deceit or fraud of the vendor. Where a vendor unwarrantably refuses to execute the deed the vendee is entitled to recover the amount of money which he has paid on account of the purchase price and also the loss of his bargain, that is, the difference between the market price of the property and the purchase price provided by the contract if the jury should find that the market price was in excess of the purchase price. *Cohen v. Cyzam Realty Co.,* 3 *N. J. Misc.* 1028, 130 *A.* 440 (*Sup. Ct.* 1925); *Brown v. Honniss,* 70 *N. J. L.* 260 (*E. & A.* 1903); *Fallon v. Reynolds,* 2 *N. J. Misc.* 798 (*Sup. Ct.* 1924); *King v. Ruckman,* 24 *N. J. Eq.* 298 (*Ch.* 1873), affirmed *Id.* 556.

It is clear that the vendee under the sale contract, whether Ganger or Moffett, did not have a legal or equitable claim against the vendors or any of them for the recovery of the $1,100 paid by Ganger to Moffett in excess of the amount of $100 paid by Moffett on account of the purchase price at the signing of the sale contract. Consequently, Ganger, in settling—if that name be given to what was done—the Chancery suit, did not impair his right to collect that excess from Moffett.

Subrogation, of purely equitable origin and nature, is recognized and applied on proper occasion in courts of law. *Polhemus v. Prudential Realty Corporation,* 74 *N. J. L.* 570 (*E. & A.* 1906). It is quite impossible to define the doctrine with such preciseness as to forecast, accurately, when it shall and when it shall not apply, but it may be said generally to exist for the purpose of enabling a party secondarily liable, who has paid the debt, to benefit by the securities or remedies which the creditors hold against the principal debtor. It will be enforced only when the applicant therefor has an equity to invoke and the cause is just and its enforcement is consonant with right and justice, and then only in a clear

case; it is not applicable where its enforcement would be inconsistent with the terms of a contract or when the contract, either expressly or by implication, forbids its application. *Bater v. Cleaver,* 114 *N. J. L.* 346 (*E. & A.* 1934). The equities of the instant case do not, in our opinion, invoke the principle of subrogation either as an incident to an election of remedies or otherwise.

But if, for the purposes of the discussion, we assume that the doctrine of subrogation did apply, and that Moffett was deprived of it, of what was he actually deprived? Certainly if he would enter, through what we may call the back door, upon the enjoyment of this equitable doctrine, he must show himself deserving of it. We have indicated the apparent futility of a suit for specific performance. Moffett had no expenses of title examination and survey; those disbursements were by Ganger. It does not appear why the vendors did not convey title, or what the market value of the property was or that it was greater than the contract price, or that the vendors or any of them were guilty of deceit or fraud. There is nothing upon which it may be said that Moffett had even a plausible expectation of recovery except on the $100 deposit. That is the extent, so far as we can tell from the record, of his deprivation, and it was within his reach to obtain a credit for it in the trial below. He did not suffer from a deprivation of subrogation, whether or not he was technically entitled to it.

The assignment was Moffett's instrument; he could have put in it what he would; but if he had inserted a clause for subrogation to the buyer's right upon a mere reimbursement of the consideration paid to him for the assignment the probability is that the assignee would not have taken because he would not thereby have stood to be made whole. In any event, the instrument did not so provide. Moffett, sued during the pendency of the Chancery suit and put on full notice of the existence and nature of the suit by the allegations in the complaint against him more than four months before the Chancery suit was terminated, could have entered that suit as a third party defendant; but he did not. On

the contrary, he had been constantly urging Ganger to bring that action. We find no disloyalty by Ganger to Moffett. The amount of $400 which he received for terminating the prosecution of the Chancery action was enough to include every recoverable damage that has been disclosed.

The sum of it all is that appellant tried his case on a mistaken conception of fact, namely, that the breach was by his assignee and not by the vendors, and upon a mistaken principle of law, namely, that if the breach was induced by the vendors, Ganger by reason thereof, or Moffett in Ganger's stead, could sue them or one of them for the recovery of all of the $1,200 paid for the assignment.

For all of the reasons above stated the judgment below should be affirmed.

*For affirmance*—Justices CASE, OLIPHANT, BURLING and ACKERSON—4.

*For reversal*—Chief Justice VANDERBILT, and Justice WACHENFELD—2.