105 N.J. Super. 339 (1969)
252 A.2d 219
FOSTER ESTATES, INC., PLAINTIFF-RESPONDENT,
v.
VICTOR J. WOLEK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 7, 1969.
Decided April 25, 1969.
*340 Before Judges GAULKIN, COLLESTER and LABRECQUE.
Mr. Richard O. Venino argued the cause for defendant-appellant.
Mr. Daniel M. Hurley argued the cause for plaintiff-respondent (Messrs. Feuerstein & Sachs, attorneys).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
This is a fire insurance subrogation case. The New Hampshire Insurance Company (New Hampshire) paid Foster Estates, Inc. (Foster) $12,498 for damage by fire to Foster's building. New Hampshire, claiming that defendant Wolek, Foster's tenant, negligently caused the fire, instituted this action in the name of Foster against Wolek for the damage caused by the fire. Wolek moved for summary judgment on the ground that, pursuant to the lease, he had bought and paid for the New Hampshire policy and therefore New Hampshire was not entitled to subrogation against him even if his negligence caused the fire. The motion was denied and we granted Wolek leave to appeal.
The facts are not in dispute. On January 15, 1962 Foster leased to Wolek certain premises upon which Foster agreed to erect a building to be used by Wolek to carry on the business of ornamental iron works. The lease was for ten years after completion of the building. It was prepared by Foster's attorney and consisted of a "Blumberg" printed form (Form No. 880) to which was appended a typewritten *341 face page and a typewritten concluding page. It contained, inter alia, the following paragraph:
"Twenty-ninth.  The Tenants agree to keep the building to be erected on the demised premises insured against loss or damage by fire, with extended coverage, in an insurance company satisfactory to the Landlord * * * and to deliver all such insurance policies to the Landlord * * * with evidence of payment of the premiums therefor."
Wolek procured the New Hampshire policy, with extended coverage, naming Foster Estates as the insured, paid the premium thereon and delivered it to Foster.
On March 18, 1965, after Wolek had finished welding a loose fender on a truck, the truck or gasoline beneath the truck caught fire, setting fire to the building. Foster used the money received from New Hampshire in settlement of the loss to repair the damage. Wolek has continued to occupy the property and to pay the rent.
The rights of a subrogated insurer can rise no higher than the rights of its insured. Furthermore, a subrogee is subject to all legal and equitable defenses that the alleged tortfeasor may have either against it or against the insured, and there can be recovery only if the cause is just and consonant with right and justice. Standard Accident Insurance Co. v. Pellecchia, 15 N.J. 162, 172, 173 (1954); Board of Education, Woodbridge Tp. v. Kane Acoustical Co., 51 N.J. Super. 319, 327 (App. Div. 1958); Larstan Industries, Inc. v. Res-Alia Holding Co., 96 N.J. Super. 37, 44 (App. Div. 1967). Cf. Fry v. Jordan Auto Company, 224 Miss. 445, 80 So.2d 53, 57 (Sup. Ct. 1955).
In 29A Am. Jur., Insurance, § 1731, pp. 807-808 it is said:
"Where insurance on mortgaged property has been obtained by the mortgagor, or at his request and expense, the insurer is not entitled to subrogation to the rights of the mortgagee on a payment of the loss to him, in the absence of a specific provision therefor in the policy; and this rule is applicable notwithstanding the insurance is taken in the name of the mortgagee."
*342 We hold that, in the absence of facts showing a contrary intention, the same rule applies when a policy insuring the landlord is obtained and paid for by the tenant, even though the tenant is not named in the policy. Cf. Larstan Industries, Inc. v. Res-Alia Holding Co., supra; Mayfair Fabrics v. Henley, 97 N.J. Super. 116 (Law Div. 1967), affirmed sub nom. Natell v. Henley, 103 N.J. Super. 161 (App. Div. 1968). (Hereafter this case will be called Mayfair II to distinguish it from Mayfair Fabrics v. Henley, 48 N.J. 483 (1967) (Mayfair I) and Mayfair Fabrics v. Henley, 101 N.J. Super. 363 (Law Div. 1968) (Mayfair III).) See also 46 C.J.S. Insurance § 1144, p. 23.
Here nothing is shown or suggested to take this case out of the general rule. On the contrary, the provisions of the lease support the conclusion that it was the intention of the parties that there be no liability upon the tenant for fire damage even if negligently caused, if the tenant provided insurance.
The lease provided that the "annual net rent" was to be six percent of the landlord's "total investment * * * in the land and in the new building to be erected thereon * * *." This was to include legal and architect's fees "and such other expenses as may properly be chargeable to this undertaking." In the event capital improvements were made by the landlord during the term of the lease, the annual rent was to be increased by six percent of the cost thereof. In addition to the fire insurance, the tenant was to provide plate glass and owner's, landlord's and tenant's public liability insurance, and pay all taxes. In short, the landlord was to earn six percent net upon his investment.
The lease provided that the tenant was to "keep the demised premises in good condition," but if the premises were damaged by "fire, explosion, the elements or otherwise * * * but yet be repairable," the landlord was to make the repairs. As we have said, Foster bargained for a six percent return on its investment. Had the lease not provided for insurance, Foster might have looked to Wolek for reimbursement *343 for the fire damage or, if not, perhaps for six percent of the cost of the repairs per annum as additional rent. The purpose of the provision that Wolek procure the insurance was to take care of that very contingency for the benefit of both Foster and Wolek at no expense to Foster.
The facts that Wolek may have negligently caused the fire and that Wolek was not named in the New Hampshire policy are immaterial. Mayfair I, II, III, supra; Larstan Industries, Inc. v. Res-Alia Holding Co., supra.
In the Mayfair cases the lease provided that the landlord was to insure the building against fire and the tenant was to insure his equipment and personal property. Such insurance was obtained. The landlord's policies made no mention of the tenant, Mayfair Fabrics, or of the lease; Mayfair's policies made no mention of the landlord. The lease provided that "in no event" was the landlord to be liable for damage to the tenant's property by fire, but there was no clause exculpating the tenant. There was a fire and the companies paid the landlord and the tenant under their respective policies. The tenant then sued the landlord (Mayfair I), alleging that the landlord's negligence caused the fire. The Supreme Court held that the exculpatory clause barred recovery, even for the landlord's own negligence. The court said:
"The plaintiff contends that since paragraph 28 did not specifically refer to actions grounded on negligence it should be deemed inapplicable here. Cf. Freddi-Gail v. Royal Holding Corp., 34 N.J. Super. 142 (App. Div. 1955). But there are no required words of art and, whatever be the language used or the rule of construction applied, the true goal is still the ascertainment and effectuation of the intent of the parties. See George M. Brewster & Son, Inc. v. Catalytic Const. Co., 17 N.J. 20, 32 (1954); Stern v. Larocca, 49 N.J. Super. 496, 501 (App. Div. 1958); Corbin,  on Contracts, supra § 1472, at p. 604. It cannot fairly be doubted that, when the parties have allocated the fire risk and the obligation to insure, they had in mind fires caused by human negligence, as most of them are, as well as fires resulting from so-called acts of God. * * *." (48 N.J., at p. 489)
The court also quoted with approval from Midland Carpet Corp. v. Franklin Assoc. Properties, 90 N.J. Super. 42, 48 *344 (App. Div. 1966) saying that in that case also "the lease reflected a studied attempt to spell out the distribution of the risks and * * * its practical effect was to specify `who was to obtain and bear the cost of insurance to indemnify against loss or damage * * *'". (48 N.J., at p. 488)
In Mayfair II the landlord sued the tenant, claiming that its negligence had caused the fire. As we have said, the tenant had no exculpatory clause to help him. Nevertheless Judge John A. Ackerman, in a thorough and well reasoned opinion, held that since the lease provided that each was to insure its own property it was plain that it was not the intention of the parties that the landlord should recover from the tenant for damage by fire caused by the tenant's negligence. Judge Ackerman said:
"* * * Here we have a commercial lease entered into between businessmen. In plain and unmistakable language they mutually agreed that each would insure his own property against loss by fire at his own expense. Their agreement should be construed to accord with the understanding of reasonable businessmen, see Mortgage Co. of New Jersey v. Manhattan Savings Bank, 71 N.J. Super. 489, 497 (Law Div. 1962), and in harmony with the modern judicial view that provisions in leases and other commercial agreements such as that here involved, whether couched in language of indemnity or exculpation or imposing obligations with respect to obtaining insurance, are to be viewed realistically as normal, common-sense efforts by businessmen to allocate between them the cost or expense of risks of property damage. They contemplate that such risks will be covered by insurance, and the only practical feature of such bargains ordinarily is the decision as to who is to bear the cost of insurance * * *.
Applying these rules, the sensible and reasonable construction of paragraph 28 is that each of the parties to the lease undertook at his own expense to secure adequate insurance against loss to his property from fire and, as between them, agreed to look to that insurance alone to recoup any loss and to relieve the other from liability for such loss even though caused by negligence, regardless of whether that liability should be asserted by the party for his own benefit or by his insurer seeking to enforce subrogation rights. It is immaterial that there was no express exculpatory clause in favor of the tenant. * * *." (97 N.J. Super., at pp. 123-124)
To paraphrase what Justice Jacobs said in Mayfair I, it cannot fairly be doubted that when the parties allocated the *345 obligation to insure they had in mind insurance against fires caused by human negligence, as most of them are, as well as fires resulting from so-called acts of God. What was said in the Mayfair cases is even more plainly true here, for here the tenant bought and paid for the insurance.
The order denying summary judgment is reversed and the case is remanded to the trial court for the entry of judgment in favor of defendant Wolek.