288 N.J. Super. 347 (1995)
672 A.2d 274
CONTINENTAL INSURANCE COMPANY, AS SUBROGEE OF FIRST FIDELITY BANK, N.A., NEW JERSEY, PLAINTIFF,
v.
OMAR BORAIE, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
October 23, 1995.
*348 Debra Kalmore Wenig, Esquire, for plaintiff (Wenig & Wenig, attorneys).
Anthony R. Mautone, Esquire, for defendant (Minichino & Mautone, PA, attorneys).
James J. Horan, Esquire, for defendant (Of Counsel, Minichino & Mautone, PA, attorneys).
YANOFF, J.S.C. (retired and temporarily assigned on recall).
The issues in this case are raised by defendant landlord's summary judgment motion.
A lease dated May 2, 1983 between Boraie as landlord and Fidelity Union Bank as tenant was extended until May 2, 1998 by letter agreement dated July 1, 1993. Paragraph 4(a) of the lease required tenant to maintain specified casualty and liability insurance. Paragraph 4(b) obligated landlord to obtain fire and other casualty insurance protecting tenant against the consequences of fire. Paragraph 4(a) further provided:

*349 All such insurance policies maintained by the Tenant, and all policies of insurance maintained by the Landlord with respect to the Demised Premises or any property of which the Demised Premises are a part shall contain provisions for waiver of subrogation against the Landlord or the Tenant, as the case may be.
Plaintiff Continental insured tenant. When Continental paid Fidelity it obtained a "Loan Receipt" which "appoints" Continental its "agent," for any claim against any party "causing or liable for the loss or damage to the property described below", in effect, a comprehensive assignment of tenant's cause of action against the tortfeasor. No claim has been made that Continental's position has been improved by reason of the terms of the "loan receipt".
Continental's fire policy of insurance to First Fidelity Bank did not contain a waiver of subrogation.
As the result of fire, Fidelity sustained property damage in the amount of $177,152.28. Since there was a $50,000 deductible, Fidelity was paid only $127,152.28. Suit is brought by Continental as subrogee for the total amount of $177,152.28 against landlord, nevertheless.
I have no difficulty in holding that Continental is not entitled to recover the sum of money which it did not pay. Colonial Penn Ins. Co. v. Ford, 172 N.J. Super. 242, 243, 411 A.2d 736 (Law Div. 1979). Thus, the question is whether Continental may recover against landlord for negligence in the maintenance of a sprinkler system for the sum which Continental actually paid.
We are concerned here with an insurance policy obtained by tenant, in violation of or without conformity to the cited lease provision. It is uncontradicted that the carrier had no notice of the lease provision requiring waiver of subrogation rights.
Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 104 A.2d 288 (1954) established that normally, a carrier paying an insurance loss is entitled to subrogation against the tortfeasor. Involved is a case in which Pellecchia, employed by Columbus Trust Company, defalcated. Standard, as surety to Columbus for Pellecchia's conduct, paid Columbus $200,000. Columbus had claims against Federal Trust Co. by virtue of Federal's guarantee of endorsements *350 on false or forged checks, which were settled. Thereafter, Standard brought suit against Federal on the rights which Columbus had had against Federal under the guarantee of endorsements. The trial court granted summary judgment to Federal. The Supreme Court reversed and remanded for trial. In a comprehensive opinion, Chief Justice Vanderbilt set out basic law as to subrogation:
Subrogation is a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it. It is a right of ancient origin, having been imported from the civil law to serve the interests of essential justice between the parties. It is most often brought into play when an insurer who has indemnified an insured for damage or loss is subrogated to any rights that the insured may have against a third party, who is also liable for the damage or loss. In such a case it is only equitable and just that the insurer should be reimbursed for his payment to the insured, because otherwise either the insured would be unjustly enriched by virtue of a recovery from both the insurer and the third party, or in the absence of such double recovery by the insured the third party would go free despite the fact that he has the legal obligation in connection with the loss or damage.

[Id. at 171, 104 A.2d 288 (citations omitted) (emphasis added).]
Despite the quoted language which tends to indicate that subrogation should not be barred by the settlement between Columbus and Federal, the summary judgment in the trial court below was reversed and the case sent back for trial on Federal's claim that Columbus had been guilty of inequitable conduct.
Mayfair Fabrics v. Henley, 48 N.J. 483, 226 A.2d 602 (1967) recognized that the parties to a contract may agree to distribute the risks attendant thereon and to designate who shall obtain the necessary insurance. This type of agreement was described carefully by Judge Ackerman in Mayfair Fabrics v. Henley, 97 N.J. Super. 116, 234 A.2d 503 (Law Div. 1967):
These rules favor the construction contended for by the tenant, who urges that the clause in question grants to both parties equal immunities from liability which are mutual and reciprocal. It is not necessary, however, to decide this motion on the basis of any rules of strict construction in favor of one party against the other. Here we have a commercial lease entered into between businessmen. In plain and unmistakable language they mutually agreed that each would insure his own property against loss by fire at his own expense. Their agreement should be construed to accord with the understanding of reasonable businessmen, and in harmony with the modern judicial view that provisions in leases and other *351 commercial agreements such as that here involved, whether couched in language of indemnity or exculpation or imposing obligations with respect to obtaining insurance, are to be viewed realistically as normal common-sense efforts by businessmen to allocate between them the cost or expense of risks of property damage. They contemplate that such risks will be covered by insurance, and the only practical feature of such bargains ordinarily is the decision as to who is to bear the cost of insurance.
[Id. at 123, 234 A.2d 503 (citations omitted).]
See in accord Dome Petroleum Ltd. v. Employers Mut. Liability Ins. Co. 767 F.2d 43, 46 (3d Cir.1985).
In the Supreme Court case the lease specifically provided that in no event would landlord be responsible for fire damage "to the tenant's property." Mayfair Fabrics, supra, 48 N.J. at 490, 226 A.2d 602. The Court held that this language exculpated landlord for damage to tenant's property. In the Law Division, upon remand from the Supreme Court, the Supreme Court decision was interpreted to include exculpation against loss of profits by tenant. Pertinent to the issue here, the Court held that the subrogee insurance carrier was barred from recovery by the exculpatory lease provision. Judge Ackerman wrote:
Although the right of an insurance company to enforce subrogation rights in appropriate cases has long been well settled, it is also clear that subrogation is not applicable when its enforcement would be inconsistent with the terms of a contract or where the contract, either expressly or by implication, forbids its application. Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162 [104 A.2d 288] (1954); Ganger v. Moffett, 8 N.J. 73 [83 A.2d 769] (1951).
[97 N.J. Super. at 126, 234 A.2d 503.]
In Mayfair Fabrics v. Henley, 101 N.J. Super. 363, 244 A.2d 344 (Law Div. 1968), Judge Ackerman expanded the basic principle of Mayfair I, that parties to a commercial contract may validly agree that losses arising out of the contract relationship will be borne by insurance, to exculpate an employee of one of the parties, although the employee was not party to the contract.
Clearly here, the parties intended to shift the risks of loss to insurance policies which they undertook to procure. A line of authority holds that the carrier, as an innocent subrogee, is not bound by the waiver of its subrogor, the insured. See ICC Industries, Inc. v. GATX Terminals Corp., 690 F. Supp. 1282, 1286 *352 (S.D.N.Y. 1988); Zurich-American Insurance Co. v. Eckert, 770 F. Supp. 269, 272-73 (E.D.Pa. 1991); Seamless Floors by Ford, Inc. v. Value Line Homes, Inc., 438 S.W.2d 598, 601-02 (Tex. App. 1969); St. Paul Fire and Marine Insurance Company v. Amerada Hess Corp., 275 N.W.2d 304, 308 (N.D. 1979); Aluminum Product Distributors, Inc. v. AAACon Auto Transport, Inc., 404 F. Supp. 1374, 1377 (W.D.Okla. 1975); Continental Insurance Company. v. Washeon Corp., 524 F. Supp. 34, 36 (E.D.Mo. 1981); Alamo Chemical Transportation Co. v. M/V Overseas Valdes, 469 F. Supp. 203, 212 (E.D.La. 1979).
Cases supporting the view that where the subrogor has waived subrogation rights, the subrogee's rights are similarly impaired, are probably the minority position. Millican v. Wienker Carpet Serv., 44 Wash. App. 409, 722 P.2d 861 (1986); Richmond Steel, Inc. v. Legal and General Assur. Soc., 821 F. Supp. 793, 800 (D.Puerto Rico, 1993); 16 G. Couch, Insurance, Sec. 61:194, 251-52 (rev. ed. 1983).
Choice between these lines of authority leads to the minority rule because it is consistent with New Jersey decision law, as enunciated in the Mayfair trilogy that business people have the right to determine that the risks of a transaction shall be borne by insurance.
Foster Estates, Inc. v. Wolek, 105 N.J. Super. 339, 252 A.2d 219 (App.Div. 1969), although it does not involve an agreement to obtain a policy with waiver of subrogation, parallels the case at bar in many ways. There, tenant agreed to obtain fire insurance "with extended coverage," a requirement which they satisfied. After a fire, allegedly caused by tenant's fault, the carrier, procured by tenant, which had paid landlord's loss, brought action against tenant. An order denying summary judgment on tenant's motion was reversed and the case was remanded with directions to enter judgment in favor of tenant.
For the court, Judge Gaulkin wrote:
The rights of a subrogated insurer can rise no higher than the rights of its insured. Furthermore, a subrogee is subject to all legal and equitable defenses *353 that the alleged tortfeasor may have either against it or against the insured, and there can be recovery only if the cause is just and consonant with right and justice.
[Id. at 341, 252 A.2d 219.]
The court continued:
To paraphrase what Justice Jacobs said in Mayfair I, it cannot fairly be doubted that when the parties allocated the obligation to insure they had in mind insurance against fires caused by human negligence, as most of them are, as well as fires resulting from so-called acts of God. What was said in the Mayfair cases is even more plainly true here, for here the tenant bought and paid for the insurance.
[Id. at 344-45, 252 A.2d 219.]
Additionally, the minority view is consistent with the rule that the rights of an assignee can rise no higher than those of his assignor, and all defenses available against an assignor at the time of an assignment are available against his assignee. See Abeles v. Adams Engineering Co., 64 N.J. Super. 167, 165 A.2d 555 (App. Div. 1960), modified on other grounds, 35 N.J. 411, 173 A.2d 246 (1960).
Plaintiff Abeles sued as assignee of a brokerage contract for obtaining a lender willing to make an institutional loan to a corporate defendant. There, assignee failed to prove that a life insurance provision had been agreed to by the defendant interested in securing a loan. The Appellate Division held that absent a meeting of the minds in the underlying transaction, the defendant was not liable to Abeles, as assignee to the original broker, writing "[t]he rights of an assignee can rise no higher than those of his assignor." Id. at 187, 165 A.2d 555.
Ringwood Assocs., Ltd. v. Jack's of Route 23, 153 N.J. Super. 294, 379 A.2d 508 (Law Div. 1977), reaffirmed the Appellate Division statement in Abeles. The Court iterated as established law that an assignee may not claim a position stronger than one his assignor could assert. Id. at 311, 379 A.2d 508. See H. John Homan Co. v. Wilkes-Barre, 233 N.J. Super. 91, 558 A.2d 42 (App.Div. 1989). See in accord Falkenstern v. Herman Kussy Co., 25 N.J. Misc. 447, 55 A.2d 11 (Sup.Ct. 1947) aff'd, 137 N.J.L. 200, 59 A.2d 372 (E. & A. 1948); Talcott, Inc. v. H. Corenzwit and Company, 76 N.J. 305, 309-310, 387 A.2d 350 (1978).
*354 Basically, subrogation is an assignment that arises either by contract, or equitable principles.
Another consideration is the principle enunciated in Robinson v. Janay, 105 N.J. Super. 585, 253 A.2d 816 (App.Div. 1969). The lease there also required tenant to furnish liability coverage to landlord. However, tenant failed to comply and the loss occurred. The court held that landlord was entitled to recover against tenant such sum of money as landlord would have recovered had there been insurance. Judge Kolovsky, for the court, stated:
The damages which may be recovered for breach of an agreement to furnish an insurance policy is the loss sustained by reason of the breach, "the amount that would have been due under the policy provided it had been obtained." That measure of damages has been consistently applied in actions for breach of agreements to furnish fire or liability insurance, and this whether the action was against a lessee.
[Id. at 591, 253 A.2d 816.]
In the case at bar, had tenant obtained the required waiver of subrogation, plaintiff's action clearly would not have been sustainable. In a suit by landlord against tenant for failure to obtain such a waiver, in all likelihood the principles of Robinson, supra, would require that tenant pay whatever damages might have been caused by its fault. While the carrier is not in the position of the landlord, nevertheless, the principle enunciated in Foster Estates, Inc., supra, that the carrier takes only the rights of the insured, militates against carrier succeeding against landlord, where its insured, from whom its rights are derived, has caused the situation to arise by its own breach of contract. In Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 104 A.2d 288 (1954), the Supreme Court sent the case to the trial court to determine whether plaintiff's inequitable conduct barred recovery. Here, tenant's failure to obtain an insurance policy without subrogation is also inequitable conduct. The insurance carrier's rights stem from the tenant's and accordingly, it may not prevail.
The result will be summary judgment in favor of landlord. The attorney for landlord should submit an appropriate order pursuant to Rule.