962 A.2d 589 (2009)
404 N.J. Super. 510
Carl SKULSKIE, Plaintiff-Appellant,
v.
Michael CEPONIS and Kris T. Ceponis, Defendants-Respondents, and
Finderne Heights Condominium Association and Preferred Property Management Company, Defendants.
Docket No. A-2397-07T1
Superior Court of New Jersey, Appellate Division.
Argued December 10, 2008.
Decided January 15, 2009.
Robert F. DiStefano argued the cause for appellant (Clark & DiStefano, P.C., Sea Girt, attorneys; Robert P. Clark, on the brief).
Roy D. Goldberg, River Edge, argued the cause for respondents (Sokol, Behot and Fiorenzo, attorneys; Joseph B. Fiorenzo, of counsel and on the brief; Steven Siegel, on the brief).
Before Judges CUFF, FISHER and BAXTER.
The opinion of the court was delivered by
CUFF, P.J.A.D.
The issue before this court is whether the waiver of a subrogation provision in a homeowner's insurance policy purchased by a condominium unit owner bars this complaint against another condominium owner who was uninsured. Judge Accurso held that the insurance carrier was barred from seeking recovery from the condominium association and the uninsured unit owner. Plaintiff appeals that portion of the order barring his action against the uninsured unit owner. We affirm.
The facts are straightforward and undisputed. Carl Skulskie owns a residential condominium unit that is part of the Finderne Heights Condominium Association (Association) in Bridgewater. As required *590 by N.J.S.A. 46:8B-14(d) and (e), the by-laws of the Association provide that the Board of Directors of the Association shall be required to obtain and maintain a policy of property insurance, a comprehensive policy of public liability insurance covering all of the common elements, fidelity coverage, workers compensation, and any other insurance deemed proper and necessary by the Board of Directors. The by-laws also require that all insurance policies shall contain a provision that "the insurer waives its rights of subrogation as to any claims against Unit Owners, the Association and their respective employees, servants, agents and guests." Moreover, each unit owner has the right, but not the obligation, to obtain insurance for personal property and personal liability, but "all such insurance shall contain the same waiver of subrogation" that governs any insurance obtained by the Association.
Skulskie suffered water damage in his residential unit. He alleged that the damage was caused by a leak from the shower or bathtub of the unit located on the floor directly above his owned by defendants Michael and Kris Ceponis. Plaintiff had obtained homeowners insurance through Proformance Insurance Company (Proformance) and submitted a claim. Proformance paid $118,547.28 to repair the damage. The insurance obtained by Skulskie contained the required waiver of subrogation provision. The Ceponises had no insurance.
Plaintiff, through Proformance, filed a complaint which asserted that the Ceponises and the Association were negligent and sought monetary damages. The Association and the Ceponises filed separate motions for summary judgment in which they argued that the waiver of subrogation provision barred the subrogation action. Proformance responded that the failure of the Ceponises to obtain insurance permitted this action. Noting that waiver of subrogation clauses have been enforced in various contexts by the courts of this state and finding no authority to support plaintiff's position, Judge Accurso granted both motions for summary judgment.[1] On appeal, Proformance argues that the enforcement of a waiver of subrogation clause in the insurance policy of an insured unit owner against an uninsured unit owner is contrary to the purpose of the provision and creates an unintended inequity.
The Supreme Court has described subrogation as "a right of ancient origin." Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171, 104 A.2d 288 (1954). Chief Justice Vanderbilt observed that "[i]t is most often brought into play when an insurer who had indemnified an insured for damage or loss is subrogated to any rights that the insured may have against a third party, who is also liable for the damage or loss." Ibid. This venerable right, however, may be waived or limited by agreement. Id. at 172, 104 A.2d 288 (citing Ganger v. Moffett, 8 N.J. 73, 79-80, 83 A.2d 769 (1951), superseded on other grounds by N.J.S.A. 2A:29-1); Bater v. Cleaver, 114 N.J.L. 346, 354, 176 A. 889 (E. & A.1934); see also Continental Ins. Co. v. Boraie, 288 N.J.Super. 347, 351, 672 A.2d 274 (Law Div.1995) (insurer's subrogation rights are not applicable when enforcement is inconsistent with the terms of a contract).
We have found no case in this state in which a waiver of subrogation provision has been considered in the context of a residential condominium scheme. We find instructive, however, a discussion of the purpose of such provisions in Schiller v. Community Technology, Inc., 78 A.D.2d 762, 433 N.Y.S.2d 640, 642 (1980). The court wrote:

*591 Most condominiums are insured not only by a master policy, covering the entire project, but also by policies covering the individual units. The master policy not only protects the over-all needs of the project, but it also guards against gaps in individual insurance contracts caused by lapsed policies or limited coverage (1 Rohan & Reskin, Condominium Law and Practice, § 11.02[2]).... The additional unit owner coverage permitted is beneficial to protect personal property and any unusually expensive alterations the unit owner may have made. The idea behind using both types of insurance is to provide coverage for the project as a whole, as well as for the individual unit owners. Of course, the use of various individual policies increases the risk that subrogation rights will be asserted by one of the insurers against a unit owner because the physical proximity and interdependence of the units makes it likely that damage from fire will extend beyond any one unit (1 Rohan & Reskin, Condominium Law and Practice, § 11.05[3]). Obviously, subrogation in this situation is undesirable because it jeopardizes the collective resources. Viewing the condominium as a whole, there would in effect be no insurance if subrogation were permitted, since the loss would ultimately fall on the careless unit owner. Thus, the particular insurance needs of condominium owners suggest that the required waivers were designed to operate only with respect to subrogation claims brought against other condominium unit owners.
[Ibid.]
The court did not apply the waiver of subrogation against a contractor retained by the condominium developer whose negligent work caused a fire in the unit because the purpose of the waiver provision was not frustrated by claims against negligent third parties. Ibid.
In light of the overall purpose of the waiver of subrogation provision in any insurance policy obtained by the unit owner, we discern no basis to allow the insurance carrier of the damaged unit owner to proceed against another unit owner, even an uninsured unit owner. The scheme created by this residential condominium community contemplated no litigation between unit owners or between unit owners and the Association. The optional nature of the insurance scheme does not alter the purpose the waiver of subrogation provision. Moreover, the insurance carrier that issues insurance to any unit owner with a waiver of subrogation provision has no expectation that it will be able to pursue a claim against a negligent unit owner. Stated differently, when an insurer, such as Proformance, issues a policy, it does so with the understanding that it has no recourse against a negligent unit owner.
We, therefore, affirm the December 7, 2007 order granting summary judgment and dismissing plaintiff's complaint.
Affirmed.
NOTES
[1] Proformance acknowledged at oral argument of the motion that the waiver of subrogation provision in the Association's policy of insurance barred its complaint.