WOLINETZ, J.S.C.
*484 The issue before the court is whether an insurance carrier is barred from maintaining a subrogation claim on behalf of a unit owner against a condominium association if the association's by-laws compel a waiver of such claims. This issue has not been addressed in any published New Jersey opinion. Based largely on the reasoning adopted by the Appellate Division in Skulskie v. Ceponis, 404 N.J. Super. 510, 514, 962 A.2d 589 (App. Div. 2009), which upheld a waiver scheme in a condominium community, the *485 court holds that the action is barred and grants the Association's motion for summary judgment.
The facts are straightforward. Thomas Laspada ("Laspada") was a unit owner and member of defendant Bridgepointe Condominium Association, Inc. (the "Association"). Laspada obtained homeowner's insurance through plaintiffs Universal North American Insurance Company and Universal North American (collectively, "Universal").
On December 12, 2014, a fire began at a unit next door to Laspada's unit. As a result of the fire, Laspada's unit sustained damages. Thereafter, Universal paid $222,173.84 to Laspada based on his policy.
On December 12, 2016, Universal, as Laspada's subrogee, filed this action against various entities, including the Association, alleging that the Association failed to properly maintain the premises which contributed to the fire. Universal primarily seeks to recover the insurance monies it paid to Laspada.
On February 1, 2018, the Association moved for summary judgment. Relying on the language of its By-Laws that bar subrogation claims, which Laspada agreed to when he became a unit owner, the Association argues that it is entitled to summary judgment on Universal's claims. Universal, *546 however, asserts that the Association's Master Deed contradicts the By-Laws and that the Master Deed governs this subrogation action. Accordingly, before the court can turn to the law governing this dispute, it must first set out the relevant provisions that the parties rely upon.
The Association's Master Deed
The Master Deed provides an overview of the Association's and unit owners' responsibilities. Relevant to this dispute is Section 8.00, Restoration and Replacement of Condominium in Event of Fire, Casualty, Obsolescence or Eminent Domain, which explains how funds are to be allocated in the event of a fire that causes damages:
*486 c. ... those parts of a Unit for which the responsibility for maintenance and repair is that of the Unit Owner, then that Unit Owner shall be responsible for reconstruction and repair, but the proceeds of any insurance that may have been obtained by the Association shall be made available for such purposes. Subject to the provisions of this Master Deed, in all other instances the responsibility of reconstruction and repair after casualty shall be that of the Association.
d. If the proceeds of insurance are not sufficient to defray the estimated costs of reconstruction and repair, ... assessments shall be made against all Owners whose Units were damaged or destroyed, in sufficient amount provide funds for the payment of such costs.... The foregoing provisions of this subparagraph ... do not cover damages to those portions of the Unit for which the responsibility of maintenance and repair is that of the Unit Owner for which the costs and expenses must be borne by each Owner; provided, however, any portion of the insurance proceeds representing damage for which the responsibility of reconstruction and repair lies with an individual Unit Owner shall be paid to said Unit Owner, or if there is a mortgage endorsement as to such Unit, then the Unit Owner and mortgage, jointly.
As to the Association's required insurance, Section 8.00, Restoration and Replacement of Condominium in Event of Fire, Casualty, Obsolescence or Eminent Domain, subsection f.(c) provides as follows:
The Association acting by and on behalf of the Unit Owners of this Condominium shall insure the buildings against risk of loss by fire and other casualties covered by a broad form fire and extended coverage policy, including vandalism and malicious mischief and such other risks as the Board of Directors for the Association shall from time to time require, all in accordance with the provisions of the By-Laws of the Association. Nothing contained in this Covenant and no provisions of the By-Laws shall be deemed to prohibit any Owner or co-Owner from obtaining insurance for his own account and for his own benefit. No Unit Owner or co-Owner shall, however, insure any part of the Common Elements whereby, in the event of loss thereto, the right of the Association to recover the insurance proceeds for such loss in full, shall be diminished or impaired in any way.
These provisions, taken together, show that while it is the Association's primary duty to maintain fire and casualty insurance for the Condominium, nothing prohibits a unit owner from obtaining insurance for his own benefit. Laspada is responsible to repair the damages within his unit, but if the Association receives insurance proceeds for Laspada's unit's damages, then the Association must pay those monies to Laspada.
*487 The Association's By-Laws
Next, the By-Laws set forth provisions that proscribe subrogation. Under Article *547 III (Board of Directors), Section 9 (Duties of Directors), subsection II, the By-Laws delegate a host of responsibilities to the Board, including the obligation to maintain insurance. But, at the same time, the By-Laws address the ability of unit owners to obtain their own insurance, provided that such insurance waives any rights of subrogation:
II. It shall be the affirmative and perpetual obligation and duty of the Board to perform the following:
f. Place and keep in force all insurance coverages required to be maintained by the Association, applicable to its property and Members ...
1) All policies shall ... (c) to the extent obtainable contain waivers of subrogation and waivers of any defense based on co-insurance or of invalidity arising from any acts of the insured ....
....
3) Unit Owners shall not be prohibited from carrying insurance for their own benefit provided that all such policies shall contain waivers of subrogation; and further provided that the liability of the carriers issuing insurance obtained by the Board shall not be affected or diminished by reason of any such additional insurance carried by any Unit Owners.
The By-Laws explain that "if any provision of these By-Laws is in conflict with or contradiction of the Master Deed, the Articles of Incorporation or with the requirements of any law, then the requirements of law, the Master Deed and Articles of Incorporation, the By-Laws, in that order, shall be deemed controlling."
LEGAL STANDARD
On a summary judgment motion, the court must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in the consideration of the applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged dispute in favor of the non-moving party." Brill v. Guardian Life Ins., 142 N.J. 520, 541, 666 A.2d 146 (1995) ; R. 4:46-2. Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact *488 challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).
To be clear, "[i]t is critical that a trial court ruling on a summary judgment motion not shut a deserving litigant from his or her trial. At the same time, ... it is just as important that the court not allow harassment of an equally deserving suitor for immediate relief by a long and worthless trial." Brill, 142 N.J. at 540-41, 666 A.2d 146 (internal citations, quotations, and alterations omitted).
The mere fact that a motion for summary judgment is made while discovery is ongoing, does not necessarily render the motion premature. See Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555, 107 A.3d 1281 (2015) ("A motion for summary judgment is not premature merely because discovery has not been completed.") (internal quotations omitted) (citing Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496, 820 A.2d 669 (App. Div. 2003) ); Auster v. Kinoian, 153 N.J. Super. 52, 56, 378 A.2d 1171 (App. Div. 1977) ) ). "[I]f the summary judgment turns on a question of law, or if further factual development is unnecessary in light of the issues presented, then summary judgment need not be delayed." United Sav. Bank v. N.J. Dep't of Envtl. Prot., 360 N.J. Super. 520, 525, 823 A.2d 873 (App. Div. 2003) (citations *548 omitted). Indeed, "[w]hen the incompleteness of discovery is raised as a defense to a motion for summary judgment, that party must establish that there is a likelihood that further discovery would supply the necessary information." J. Josephson, Inc. v. Crum & Forster Ins. Co., 293 N.J. Super. 170, 204, 679 A.2d 1206 (App. Div. 1996) (citing Auster, 153 N.J. Super. at 56, 378 A.2d 1171 ). See also Badiali, 220 N.J. at 555, 107 A.3d 1281 ("[P]laintiff [must be] able to demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action.") (internal quotations and citations omitted).
Lastly, in addressing a dispute involving a contract, "[p]urely legal questions, such as the interpretation of [the] contract[
*489 ], are questions of law particularly suited for summary judgment." Badiali, 220 N.J. at 555, 107 A.3d 1281 (citation omitted). Thus, it is within the province of the trial court "to determine whether there is a genuine issue for trial." Id. at 540, 666 A.2d 146 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ).
DISCUSSION
1. The Condominium Act
The New Jersey Legislature, in 1969, "recognized a new form of ownership of real property in enacting the Condominium Act." Siller v. Hartz Mountain Assocs., 93 N.J. 370, 375, 461 A.2d 568 (1983). Among other things, the Condominium Act "provides that ... condominium[s] will be administered and managed by th[eir respective] association[s]." Ibid. (citing N.J.S.A. 46:8B-3(b) ; N.J.S.A. 46:8B-12 ). In this regard, every condominium association owes a fiduciary duty to its condominium unit owners, "comparable to the obligation that a board of directors of a corporation owes its stockholders." Thanasoulis v. Winston Towers 200 Ass'n., 110 N.J. 650, 657, 542 A.2d 900 (1988). The respective rights and responsibilities of unit owners and condominium associations are governed by the Condominium Act, N.J.S.A. 46:8B-1 to -38, the master deed creating the condominium, and the condominium association's by-laws. See Walker v. Briarwood Condo Ass'n, 274 N.J. Super. 422, 426, 644 A.2d 634 (App. Div. 1994).
Under New Jersey law, a condominium association's board of directors is "required to obtain and maintain a policy of property insurance, a comprehensive policy of public liability insurance covering all of the common elements, fidelity coverage, workers compensation, and any other insurance deemed proper and necessary by the Board of Directors." Skulskie, 404 N.J. Super. at 511, 962 A.2d 589 (citing N.J.S.A. 46:8B-14(d) and (e) ).
Next, "[a] unit deed 'shall have the same force and effect in regard to such unit as would be given to a like instrument *490 pertaining to other real property* * *.' " Thanasoulis, 110 N.J. at 658, 542 A.2d 900 (quoting N.J.S.A. 46:8B-10). Additionally, "each unit shall constitute a separate parcel of real property which may be dealt with by the owner thereof in the same manner as is otherwise permitted by law for any other parcel of real property." N.J.S.A. 46:8B-4. See also Siller, 93 N.J. at 375, 461 A.2d 568 (explaining that a "unit owner, having a fee simple title, enjoys exclusive ownership of his individual apartment or unit, while retaining an undivided interest as a tenant in common in the common facilities").
While a unit owner maintains several rights similar to any landowner, by acceptance of title, a unit owner is presumed to agree to the condominium association's master deed and by-laws. See Siller, 93 N.J. at 378-82, 461 A.2d 568.
*549 Nevertheless, a unit owner "does have primary rights to safeguard his interests in the unit he [or she] owns." Id. at 382, 461 A.2d 568.
As to fire damage under the Condominium Act, N.J.S.A. 46:8B-24, provides as follows:
(a) Damage to or destruction of any improvements on the condominium property or any part thereof or to a common element or elements or any part thereof covered by insurance required to be maintained by the association shall be repaired and restored by the association using the proceeds of any such insurance. The unit owners directly affected shall be assessed on an equitable basis for any deficiency and shall share in any excess.
(b) If the proceeds of such insurance shall be inadequate by a substantial amount to cover the estimated cost of restoration of an essential improvement or common element or if such damage shall constitute substantially total destruction of the condominium property or of one or more of the buildings comprising the condominium property or if 75% of the unit owners directly affected by such damage or destruction voting in accordance with the procedures established by the by-laws shall determine not to repair or restore, the association shall proceed to realize upon the salvage value of that portion of the condominium property so damaged or destroyed either by sale or such other means as the association may deem advisable and shall collect the proceeds of any insurance. Thereupon the net proceeds of such sale, together with the net proceeds of such insurance shall be considered as one fund to be divided among the unit owners directly affected by such damage or destruction in proportion to their respective undivided ownership of the common elements. Any liens or encumbrances on any affected unit shall be relegated to the interest in the fund of the unit owners.
*491 (c) The master deed or the by-laws may make other and different provision[s] covering the eventualities set forth in paragraphs (a) and (b) of this section or covering other results of damage or destruction to any part or all of the condominium property, notwithstanding the provisions of paragraphs (a) and (b). If the master deed or by-laws shall require insurance against fire and other casualty with respect to individual units, it shall also provide for the application of the proceeds and the rights and obligations of unit owners in case of damage or destruction.
[ N.J.S.A. 46:8B-24 (emphasis added).]
See generally Wendell A. Smith, Dennis A. Estis, and Christine F. Li, New Jersey Condominium and Community Association Law, at 127-30 (2017).
2. The Association's By-Laws and
Here, as a unit owner and member of the Association, it is undisputed that Laspada agreed to the terms contained in the Association's Master Deed and By-Laws. Further, it is undisputed that the Association is responsible for insuring the buildings against risk of loss by fire. Moreover, it is undisputed that Laspada was permitted to purchase his own insurance for his own unit, provided that such insurance "shall contain waivers of subrogation." It is also undisputed that Universal knew or should have known about the Association's Master Deed and By-Laws, including the Waiver of Subrogation Provision, before it agreed to sell Laspada an insurance policy.
The issue before the court is whether these factors preclude Universal's right to pursue subrogation in this case - a right which may be waived or limited by *550 agreement. Skulskie, 404 N.J. Super. at 513, 962 A.2d 589 ; Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 172, 104 A.2d 288 (1954) ("The right [of subrogation] does not arise out of contract but rather exists without the consent of the insured, although of course the parties may by agreement waive or limit the right. The subrogee in effect steps into the shoes of the insured and can recover only if the insured likewise could have recovered.") (internal citations omitted).
Here, the Association contends that the Master Deed and By-Laws preclude Universal from proceeding with this subrogation *492 action. Specifically, the Association argues that while Laspada was permitted to purchase insurance to cover his own unit, any insurance he purchased was required to contain a subrogation waiver. In support of their argument, the Association relies on Skulskie.
In Skulskie, a condominium unit owner, sustained water damages in his unit. The unit owner alleged that a unit located upstairs had faulty plumbing and that either the bathtub or shower caused a leak into his apartment.
The unit was located within the Finderne Heights Condominium Association (the "Finderne Association"), which had by-laws requiring its unit owners' insurance policies to "contain a provision that 'the insurer waives its rights of subrogation as to any claims against Unit Owners, the Association and their respective employees, servants, agents and guests.' " Skulskie, 404 N.J. Super. at 513, 962 A.2d 589. Each unit owner was permitted to purchase his or her own insurance, so long as it included the same waiver of subrogation provision included in the Finderne Association's by-laws. Pursuant to the Finderne Association's by-laws, the plaintiff had purchased his own homeowner's insurance, which included the required waiver of subrogation provision. After the plaintiff in Skulskie sustained water damage, his insurance carrier paid $118,547 to repair the damages. In turn, the insurance carrier brought suit against the other unit owner (who had no insurance) seeking reimbursement.
The Appellate Division in Skulskie concluded that "[i]n light of the overall purpose of the waiver of subrogation provision in any insurance policy obtained by the unit owner, we discern no basis to allow the insurance carrier of the damaged unit owner to proceed against another unit owner, even an uninsured unit owner." Id. at 514, 962 A.2d 589. The Appellate Division went on to explain that "[t]he scheme created by this residential condominium community contemplated no litigation between unit owners or between unit owners and the Association." Ibid. (emphasis added). As such, the court reasoned that the plaintiff's uninsured neighbor should be protected against the lawsuit because of "[t]he optional nature of *493 the insurance scheme [which did] not alter the purpose of the waiver of subrogation provision." Ibid. Ultimately, the Appellate Division explained that because "the insurance carrier ... issue[d] insurance ... with a waiver of subrogation provision," it should not have had an "expectation that it w[ould] be able to pursue a claim against a negligent unit owner." Ibid.
According to the Association, Skulskie governs this dispute. The Association argues that its By-Laws provide a similar waiver scheme over subrogation. Specifically, the Association argues that the Waiver of Subrogation Provision in the By-Laws requires unit owners' insurance carriers to waive rights of subrogation. In so doing, the Association argues that its language is designed to create a scheme that "contemplate[s] no litigation between unit *551 owners or between unit owners and the Association." Ibid. (emphasis added).
The Association's position is logical because the Association is, in effect, a collection of unit owners. If subrogation against an Association were permitted in the condominium context, it would penalize all of the unit owners regardless of fault and pit unit owner against unit owner, and unit owners against the Association - a result contrary to the scheme created by the Association.
It is unclear whether or not the Universal-Laspada insurance policy contained a waiver of a subrogation clause - the policy was not provided to the Court. Nevertheless, as noted above, Laspada certainly knew of the Waiver of Subrogation Provision in the By-Laws and Universal knew or should have known about that waiver before it sold Laspada insurance. In this regard, "[t]he rights of a subrogated insurer can rise no higher than the rights of its insured." Continental Ins. Co. v. Boraie, 288 N.J. Super. 347, 352, 672 A.2d 274 (Law Div. 1995) (citing Foster Estates, Inc. v. Wolek, 105 N.J. Super. 339, 341, 252 A.2d 219 (App. Div. 1969) ). Accordingly, Universal cannot assert a right that Laspada does not have.
*494 Universal advances several arguments for why this court should deny the Association's motion for summary judgment:
(1) The Association's Master Deed contains no restriction on subrogation and therefore conflicts with the By-Laws;
(2) The Waiver Subrogation Provision is part of an adhesion contract and should not be enforced; and
(3) Discovery has not concluded.
Universal's arguments fail. The court will address each in turn.
The absence of a subrogation waiver provision in the Association's Master Deed does not necessitate a conflict with the By-Laws. This court's "obligation when interpreting contractual provisions is clear. First and foremost, 'fundamental canons of contract construction require that [the court] examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances.' " Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 115, 892 A.2d 646 (2006). Thus, it is the court's goal "to discover the intention of the parties." Ibid. Moreover, in the event of potentially contradictory terms, "the several parts of a contract should be so construed as to avoid conflict." Silverstein v. Dohoney, 32 N.J. Super. 357, 364, 108 A.2d 451 (1954). See also State v. Reynolds, 124 N.J. 559, 564, 592 A.2d 194 (1991) ("A construction that will render any part of a [contract] inoperative, superfluous, or meaningless, is to be avoided.").
Here, the Master Deed states that "[n]othing contained in this Covenant and no provisions of the By-Laws shall be deemed to prohibit any Owner or co-Owner from obtaining insurance for his own account and for his own benefit." The By-Laws provide that "Unit Owners shall not be prohibited from carrying insurance for their own benefit provided that all such policies shall contain waivers of subrogation." The Master Deed provides that Laspada was permitted to purchase insurance for his benefit. And, the provision in the By-Laws permits Laspada to purchase his own insurance, so long as the insurance contains a subrogation waiver. There is no conflict.
*495 This court is obligated to avoid, where possible, conflicting terms. It is undisputed that the Association has the primary obligation to obtain insurance for the community. At the same time, the By-Laws permit unit owners to purchase their own *552 insurance to cover their unit and personal possessions. Here, nothing in these provisions is contradictory and there is no basis to render the subrogation waiver in the By-Laws meaningless.
Second, the By-Laws do not constitute an unenforceable adhesion contract. A contract of adhesion is defined as "a contract where one party must accept or reject the contract." Rudbart v. N. Jersey Dist. Water Supply Comm'n., 127 N.J. 344, 353, 605 A.2d 681 (1992) (citations and alterations omitted). "[I]n determining whether to enforce the terms of a contract of adhesion, courts have looked not only to the take-it-or-leave-it nature or the standardized form of the document but also to the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract." Id. at 356, 605 A.2d 681 ; Vitale v. Schering-Plough Corp., 231 N.J. 234, 247, 174 A.3d 973 (2017).
The By-Laws here involve a condominium association and respective condominium unit owners. There is no evidence that Laspada was forced to purchase a condominium unit. Rather, unit owners, such as Laspada, freely chose to purchase a unit and agreed to be bound by the Association's Master Deed and By-laws. Unit owners, like Laspada, knew full well that they would be bound by rules and restrictions to live in a condominium community. Accordingly, the By-Laws are not an unenforceable contract of adhesion. See generally Skulskie, 404 N.J. Super. at 514, 962 A.2d 589.
As for discovery, Universal claims that summary judgment is premature until it receives copies of the following documents:
• The Board's insurance policies, as required by the By-Laws;
*496 • The Rules and Regulations referenced in the By-Laws;
• Documents showing that the Board appointed an Insurance Trustee, as required by the By-Laws;
• The Master Deed;
• The By-Laws; and
• The Articles of Incorporation.
The Master Deed and By-Laws are included as exhibits in Universal's papers on this motion. Second, Universal has failed to "demonstrate with some degree of particularity the likelihood that [these documents] will supply the missing elements of [its] cause of action." Badiali, 220 N.J. at 555, 107 A.3d 1281. Universal has offered no legitimate rationale to suggest that these documents will invalidate the Waiver of Subrogation Provision contained in the By-Laws. This motion is ripe for decision.
CONCLUSION
The waiver of subrogation provision is enforceable and Universal cannot proceed in this subrogation action. The insurer, Universal, cannot take a right of subrogation from the insured, Laspada, that he never had. Summary judgment in favor of the Association and against Universal is GRANTED .