41 N.J. Super. 221 (1956)
124 A.2d 607
JOSEPH VIDDISH, PLAINTIFF-APPELLANT,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 23, 1956.
Decided August 2, 1956.
*223 Before Judges FREUND, COOLAHAN and WEINTRAUB.
Mr. John VR. Strong argued the cause for plaintiff-appellant (Messrs. Strong & Strong, attorneys).
Mr. Sidney M. Schreiber argued the cause for defendant-respondent (Messrs. Schreiber, Lancaster & Demos, attorneys).
The opinion of the court was delivered by WEINTRAUB, J.S.C. (temporarily assigned).
Plaintiff appeals from a summary judgment obtained by defendant on motion. The amended complaint contains four counts. In the first count plaintiff alleges he is a third-party beneficiary or an insured under a policy of automobile insurance issued by defendant to its named insured, Chicago Express, Inc., and seeks recovery in the amount of two default judgments rendered against him in the State of Illinois as a result of an accident which he there experienced. The second count alleges plaintiff was unable to pay the judgments, his driver's license was for that reason revoked, and by reason of defendant's breach of contract he was unable to continue to drive his tractor, with resulting losses to him. The third count seeks to recover the same losses referred to in the second count on a charge that defendant was negligent in failing to defend the Illinois actions and in failing to satisfy the judgments, and the fourth count seeks to recover the same damages on the charge that defendant was negligent in failing to notify plaintiff that it would not defend the Illinois suits or satisfy the judgments therein.
*224 The trial court entered summary judgment on the ground that plaintiff failed to pay the Illinois judgments and for that reason could not maintain an action.

I.
The judgment cannot be sustained as to any of the counts on the ground upon which the trial court rested it.
The policy reads:

"I. COVERAGE A  BODILY INJURY LIABILITY
To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

COVERAGE B  PROPERTY DAMAGE LIABILITY
To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile."
The so-called "no action" clause reads:
"No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.
Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability.
Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder."
"There is a well settled distinction between a contract of indemnity and one to pay legal liabilities. No action can be brought or recovery had on the former until the liability *225 is discharged; whereas, upon the latter, the cause of action is complete when the liability attaches." Chodosh Bros. v. American Mutual Liability Insurance Company of Boston, 119 N.J.L. 335, 336 (E. & A. 1938). Our cases have consistently distinguished between a contract of insurance for indemnity against loss and a contract for insurance against liability, and this distinction is quite universally accepted. Nakonieczny v. Commonwealth Casualty Company, 111 N.J.L. 137 (Sup. Ct. 1933); Travellers' Insurance Company v. Moses, 63 N.J. Eq. 260 (E. & A. 1901); 8 Appleman, Insurance Law and Practice (1942), secs. 4855-6, pp. 257-9.
Nothing in the policy suggests payment is a condition precedent to an action against the insurer. The coverage provisions quoted above provide plainly that defendant agrees "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay," and the no action clause requires only that the amount of the insured's obligation shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company. The case is squarely controlled by Nakonieczny v. Commonwealth Casualty Company, supra (111 N.J.L. 137).
Defendant seeks to avoid Nakonieczny by stressing the fact that the covenant is to pay "on behalf of the Insured," thus indicating, defendant asserts, an intention that payment be made to injured claimants rather than to the insured, and further urges it would be in jeopardy of multiple payment if both plaintiff and an injured claimant were free to proceed against it. A contract for insurance against liability contemplates the insured will pay third-party claimants on behalf of the insured; an express statement to that effect merely spells out what would be implicit in its absence. The possibility of multiple exposure is necessarily present under a contract insuring against liability rather than loss, whenever, as here, the third-party claimant is also entitled to sue the insured directly. That possibility in fact existed in Nakonieczny and hence it may not be distinguished on this *226 basis. The full provisions quoted above plainly show an intention that the insured be protected against established liabilities without the necessity of experiencing loss by actual payment. When the insured's liability is determined, the insurer is bound to pay, and upon its failure so to do, the insured's right to sue is complete.
The possibility of multiple payment is unduly emphasized. Where the insurer disputes its liability and the insured prevails, the insurer can forthwith satisfy the judgment obtained by the third-party claimant and receive appropriate relief by application in the cause brought by its insured. If in some situation such relief should be unavailing, and none occurs to us, the risk thereof inheres in the nature of the contract the insurer wrote.

II.
Defendant urges that if the judgment may not rest upon the ground upon which the trial court placed it, yet it should be affirmed for other reasons. The difficulty lies in the want of an appropriate record for a determination of the further issues which defendant projects.
The notice of motion did not suggest the particular grounds defendant had in mind. It said merely that defendant would rely "upon the pleadings and certain documents which have been stipulated in evidence by the parties." The documents consist in part of communications between defendant and Chicago Express, Inc. in which facts and contentions are asserted. Largely on the basis of these letters defendant argues (1) plaintiff did not transmit the Illinois suit papers in one of the actions to defendant as required by the policy, and (2) at the time of the accident plaintiff was pursuing a personal mission beyond the coverage. No affidavit was submitted. There is nothing in the record to indicate the exhibits tell the whole story, and before us plaintiff disputed that they do.
A review of the issues will reveal the trial court appropriately omitted to pass upon them under the principles *227 applicable to motions for summary judgment, and, for like reason, we should not. Judson v. Peoples Bank and Trust Company of Westfield, 17 N.J. 67 (1954).
The first issue, failure to transmit the suit papers, was not advanced in defendant's answer. Nor does it appear in the pretrial order either in defendant's factual statement or in the specification of issues. Additionally, the statement of issues includes "estoppel," without amplification, which probably was, at the time of pretrial conference, addressed to defendant's denial of basic coverage. We assume defendant advanced the claim of breach of covenant at the argument on the motion, but manifestly if the trial court had concluded to entertain it, appropriate opportunity would have been granted plaintiff to adduce proof with respect to it.
The issue of coverage is raised in the following circumstances: Plaintiff owned the tractor involved in the accident. He had entered into an agreement of lease with Chicago Express, Inc., wherein he agreed to furnish and operate his tractor for Chicago Express, Inc. The lease agreement reads in part:
"In consideration of the privileges and benefits derived from this agreement, Contractor [plaintiff] agrees that Carrier [Chicago Express, Inc.] shall have exclusive right to use the equipment described herein and that he will at all times hold said equipment ready for the service of the Carrier, unless release in writing is secured from Carrier or its authorized agent. Contractor agrees to fully indemnify Carrier for any expense or other burden imposed by reason of Contractor's failure to comply with this paragraph." (Italics appear in the contract)
We gather from the scant record that plaintiff was in Chicago pursuant to the lease agreement, apparently having transported a cargo from this area to that city. En route, his dental bridge broke, and, with permission of the dispatcher of Chicago Express, Inc., he drove the tractor (then disconnected from the trailer) to a dentist to obtain a bridge, and in the course of that specific travel was involved in the accident. Plaintiff says his tractor had not been "released" under the terms of the quoted provision.
*228 Defendant argues its coverage is limited to operations solely in the transportation service of the named insured and plaintiff's mission at the time of the accident was not within the coverage.
Item 1 of the declarations describes the business of the named insured as "Freight Hauling."
Item 4, headed "Description of the automobile," reads "(Description waived) All Commercial vehicles owned and/or operated by insured."
Item 5 describes the purposes for which the automobile is to be used as "Commercial" and defines "commercial" as "use principally in the business occupation of the Named Insured as stated in Item 1, including occasional use for personal, pleasure, family and other business purposes."
The so-called "omnibus clause," defining the word "Insured," provides:
"With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word `Insured' includes the Named Insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof provided the actual use of the automobile is by the Named Insured or with his permission. * * *"
Thus far the record would easily support a finding of coverage. The tractor was "operated" by Chicago Express, Inc., within the meaning of Item 4 of the declarations; plaintiff drove the tractor with the permission of the named insured; and the definition of "commercial" embraces the trip to the dentist as an occasional use for personal purposes, even if it be assumed that the mission was divorced from the transportation service of the named insured.
Defendant, however, relies upon an endorsement bearing the same date as the policy. The endorsement, captioned "Earnings Basis  Truckmen," provides in part:
"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability applies with respect to all licensed commercial automobiles owned, hired, or used by the named insured in the motor transportation service of *229 the named Insured without a specific description of such automobiles, subject to the following provisions:
1. Application of Insurance. Subject to the limitations, conditions and exclusions of the policy applicable with respect to the named Insured, the insurance afforded by this endorsement applies with respect to the owner or operator of such automobiles hired by the named Insured whether owned and operated by an independent contractor or by an employee of the named Insured, provided
(a) such insurance applies only while such automobiles are operated solely in the motor transportation service of the named Insured; * * *."
The endorsement states with respect to the "insurance afforded" that the "Purposes of use" are "commercial" and concludes:
"Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements, or declarations of the undermentioned policy, other than as above stated."
This endorsement was replaced prior to the accident by a like endorsement, indistinguishable for present purposes.
Defendant emphasizes the phrase "such insurance applies only while such automobiles are operated solely in the motor transportation service of the named Insured." But it is not at all clear that this phrase has the purport defendant attributes to it, namely, that the precise operation at the moment of an accident be solely in furtherance of transportation of cargo. Rather it may mean only that the vehicle be in the exclusive hire of the named insured for the purpose of its transportation service, and if in such exclusive hire during the period within which the accident occurs the coverage will be measured by the definition of "commercial" set forth in the declarations. If the endorsement were meant to replace the more expansive agreed meaning of "commercial," there would seem to be no point in repeating in the endorsement the statement that the purpose of use is "commercial." Rather, on defendant's view, no reference whatever would have been made to "commercial" in the endorsement, or if reference were made, it would have been accompanied by a statement limiting its meaning solely to the *230 operation of its business of "Freight Hauling" as described in Item 1 of the declarations, or limiting it to vehicles owned by the named insured if a distinction were intended in the endorsement between vehicles owned and vehicles hired. Hence, it may well be concluded that the endorsement continues coverage for an occasional personal use with the permission of the named insured.
Moreover, we are not at all certain that if the definition of "commercial" be ignored, plaintiff was not solely engaged in the named insured's transportation service. When the accident occurred, plaintiff was some 800 miles from his home base. Whether he was to remain in Chicago for a return load, the record does not disclose. How imperative was his personal need, and whether he could have furthered his obligation to the named insured without the dental aid, we cannot tell from what is before us. Nor does the extent of the physical departure appear. Nor can we now estimate the impact of the consent given by the named insured's dispatcher, which, in the context of the full facts, may bear upon the question whether plaintiff remained in the transportation service of the named insured. The expression "motor transportation service of the named Insured" may well embrace more than the physical act of hauling cargo. It may embrace necessary preparations for hauling freight, including operation of the vehicle to procure necessary personnel, and in that sense of the term may, upon all the facts, include provision for the personal need of plaintiff without which the freight might not have been carried. Nor can we, on this record, determine whether the deviation, if such it was, should suffice to take plaintiff beyond coverage. Cf. 7 Appleman, Insurance Law and Practice (1942), sec. 4324, p. 96. Nor on the record can we consider the issue of estoppel advanced in the pretrial order, as to which the trial court, if it believed the issue could be handled on the motion, doubtless would have given plaintiff full opportunity to adduce additional facts.
The record is inadequate for the solution of any factual issue as a matter of law. Nor should issues of construction *231 of the policy be resolved in academic fashion. A factual context may aid in construction, or render it unnecessary. For like reasons, we should not now consider any legal questions which the second, third and fourth counts may present.
The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion, costs to abide the event.