105 N.J. Super. 585 (1969)
253 A.2d 816
E.L. ROBINSON, PLAINTIFF,
v.
EDWARD JANAY AND MURIEL JANAY, HIS WIFE, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS, BERGENWOOD CONSTRUCTION CO., A CORPORATION OF THE STATE OF NEW JERSEY, JANAY ELECTRIC COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, MORSEMERE IRON WORKS, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS, AND RICH LAN, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 21, 1969.
Decided June 2, 1969.
*586 Before Judges GOLDMANN, KOLOVSKY and CARTON.
Mr. George R. Handler argued the cause for defendants-appellants Edward and Muriel Janay.
Mr. Jacob M. Goldberg argued the cause for defendant-respondent and cross-appellant Rich Lan, Inc. (Messrs. Klein & Klein, attorneys).
*587 The opinion of the court was delivered by KOLOVSKY, J.A.D.
After a trial without a jury in the Law Division, the court ruled in part that (1) Edward Janay and Muriel Janay (Janay), the owners of property known as 22 Bergenwood Road, Fairview, were not entitled to damages from their lessee Rich Lan, Inc. (Rich Lan) by reason of the latter's breach of its covenant to provide and maintain liability insurance coverage for Janay, and (2) that although Rich Lan had the right to recover from Janay the $10,000 deposited by it under a contract for the purchase of the Janay property, interest on that sum would not be awarded it.
Janay appeals from so much of the judgment as embodies the first ruling; Rich Lan cross-appeals from the refusal to allow it interest on the $10,000.
By lease dated July 18, 1963 Janay had leased to Rich Lan, for a term of ten years from October 1, 1963, premises known as 22 Bergenwood Road, Fairview, New Jersey, and the two-story building which the landlords agreed to construct thereon. The premises were to be used by Rich Lan for warehousing textiles and for manufacturing them into finished goods.
The respective obligations of the landlords and tenant of this commercial property and the building constructed for the exclusive use of the tenant are set forth in detail in the lengthy lease. Most of the tenant's covenants, other than its agreement to pay rent, appear in the eight subparagraphs of paragraph 3.
The tenant's obligation to furnish and maintain liability insurance coverage not only for itself but also for the landlords is contained in paragraph 3 (f), which provides that the tenant shall:
"(f) Provide, maintain and pay the cost of liability insurance insuring the Landlord and Tenant, as their respective interests may appear, against any and all claims which may be established or made against the Landlord for property damage and for damages which may result from the death of or injury to any person or persons who may be near, in or upon the demised premises during the said term, which said insurance shall be in the amount of $5,000.00 for property damage *588 and in the amount of at least $100,000.00 for the death of or injury to one person and in the amount of at least $300,000.00 for the death of or injury to two or more persons.
All insurance provided for herein shall be covered by policies of insurance of responsible companies duly authorized to transact business in New Jersey.
All policies of insurance provided for herein shall be made payable to the Landlord and Tenant and subtenant, if any, as their respective interests may appear, and original policies therefor shall be delivered to the Landlord, together with receipted bills showing payment of premiums therefor."
Further reference to the tenant's obligation to furnish insurance is found in paragraph 13, which grants the landlords the option to reenter the premises in the event of default by the tenant in any of its several obligations under the lease. Although the paragraph sets forth grace periods during which the tenant may cure various defaults, it specifically provides "that there shall be no grace period for the furnishing of insurance and the payment of premium therefor."
In addition, paragraph 11 of the lease provides:
"11. It is hereby agreed that should the Tenant fail to procure, maintain and pay for insurance as provided herein, the Landlord may have such policies issued and pay the premium therefor and the same shall become due from the Tenant as rent on the first of the month following the payment of such premiums by the Landlord."
Rich Lan did arrange for the issuance of a liability policy but, contrary to what was called for by paragraph 3(f), the policy named only Rich Lan as the insured. Concededly, Janay never was told and had no knowledge of that fact until some time after March 31, 1964, on which date plaintiff Robinson, a truckman delivering merchandise or supplies to Rich Lan, was injured as the result of the fall of the building's freight elevator.
Paragraph 28 of the lease granted Rich Lan an option, to be exercised by October 1, 1968, to purchase the premises for $130,000. However, under date of May 19, 1964, Janay *589 and Rich Lan executed a contract providing for the sale of the property to Rich Lan for $125,000, with a $10,000 deposit being paid by Rich Lan on execution of the agreement.
The contract obligated Janay to install a Revolvator hydraulic elevator in the building prior to September 8, 1964, the date fixed for closing of title. In March 1965 Rich Lan served notice on Janay that it had declared a default because the Revolvator elevator had not yet been installed and demanded return of its $10,000 deposit. The deposit was not returned. Installation of the Revolvator elevator was not completed until August 1965.
Robinson instituted this action to recover for his personal injuries on February 1, 1965. Joined as parties defendants in addition to Janay and Rich Lan were Bergenwood Construction Co., which had constructed the building, Janay Electric Company, the electrical contractor and Morsemere Iron Works which allegedly had installed the elevator shaft.
Janay filed a cross-claim against Rich Lan alleging that by reason of the Rich Lan's breach of its covenant to furnish liability insurance coverage for Janay, Janay was entitled to judgment against Rich Lan "for all sums that may be adjudged against" Janay in favor of plaintiff Robinson.
Rich Lan's "counterclaim" to the Janay cross-claim sought, among other things, recovery of the $10,000 deposited under the contract of sale.
The claims asserted by Janay and Rich Lan against each other were severed for trial after trial of the Robinson personal injury action. That action, tried to a jury, resulted in a verdict awarding Robinson damages of $14,500 against Janay, Bergenwood Construction Co. and Janay Electric Company, and a verdict of no cause for action in favor of Rich Lan. A dismissal was granted Morsemere Iron Works during trial.
On April 26, 1967 Robinson caused execution to issue on his judgment. On May 3, 1967 Janay served notice of appeal from the judgment in Robinson's favor. On May 8, 1967 Robinson served notice of appeal from the judgment in *590 Rich Lan's favor. The appeals were thereafter abandoned and dismissed following the delivery by Robinson to Janay's attorney of a warrant for satisfaction of the judgment. The warrant, dated January 22, 1968, was filed with the clerk of the court on March 1, 1968.
Some six weeks later the Janay and Rich Lan cross-claims were tried and resulted in the judgment under appeal.

The Janay Appeal
The trial judge's conclusion that the damages which Janay sought to recover for the breach of Rich Lan's covenant to furnish liability insurance  the amount of the Robinson judgment  "do not naturally and freely flow from the breach thereof" and were "not within the contemplation of the parties," was bottomed on his interpretation of paragraphs 3(f) and 11 of the lease. He recognized that paragraph 3(f) obligated the tenant to furnish a liability insurance policy affording coverage to the landlords. However, in his opinion, the landlords' remedy in the event that the tenant did not furnish the policy was limited to the exercise of the right granted them by paragraph 11  the right to procure the policy themselves and to collect the premium paid as additional rent.
We find no justification for that interpretation of the lease. By paragraph 3(f) the tenant assumed the unconditional obligation to furnish liability insurance coverage to the landlords. If it breached that covenant, it was liable in damages for the breach. Nothing in the lease provides  and there is no warrant for incorporating such a provision by implication  that Rich Lan's obligation under paragraph 3(f) or its liability in damages for a breach thereof is in any wise limited because the lease also grants the landlords additional remedies for such breach, viz., the right to reenter (paragraph 13) and the right to procure the policy themselves and collect the premium therefor as additional rent (paragraph 11).
*591 Finally, Rich Lan may not in any event invoke paragraph 11 of the lease to diminish its obligation and liability under paragraph 3(f) since it did not give notice to Janay that it had failed to procure the requisite insurance. Cf. Marano v. Sabbio, 26 N.J. Super. 201, 206 (App. Div. 1953); Rider v. Lynch, 42 N.J. 465, 477 (1964).
The damages which may be recovered for breach of an agreement to furnish an insurance policy is the loss sustained by reason of the breach, "the amount that would have been due under the policy provided it had been obtained." 43 Am. Jur.2d, Insurance, § 174, p. 231. That measure of damages has been consistently applied in actions for breach of agreements to furnish fire or liability insurance, and this whether the action was against a lessee (Marconi Wireless T. Co. of America v. Universal Transp. Co., 194 App. Div. 272, 185 N.Y.S. 65 (App. Div. 1920), affirmed 233 N.Y. 581, 135 N.E. 926 (Ct. App. 1922); Franck v. Stout, 139 Wis. 223, 120 N.W. 867, 868 (Sup. Ct. 1909); Jacksonville, M., P. Ry. & Nav. Co. v. Hooper, 160 U.S. 514, 529, 16 S.Ct. 379, 40 L.Ed. 515 (1896); American Trust Co. v. Truck Insurance Exchange, 147 Cal. App.2d 395, 305 P.2d 73, 75 (D. Ct. App. 1957); Benton v. Alcazar Hotel Co., 352 Mo. 836, 180 S.W.2d 33, 39 (1944); 32 Am. Jur., Landlord & Tenant, § 183, p. 176), against a bailee (Lazar v. Cohen, 127 N.J.L. 310 (Sup. Ct. 1941); Ditmars v. Grand Stores, Inc., 134 N.J.L. 115, 116 (Sup. Ct. 1946), reversed on other grounds 134 N.J.L. 570 (E. & A. 1946)), or against an insurance broker (43 Am. Jur.2d, Insurance, § 174, p. 231; Rider v. Lynch, 42 N.J. 465 (1964); Marano v. Sabbio, 26 N.J. Super. 201 (App. Div. 1953)).
(We need not consider whether the damages otherwise recoverable would be diminished in a case where the promisor had notified his promisee that the policy could not or would not be provided. Cf. National Mahaiwe Bank v. Hand, 80 Hun. 584, 30 N.Y.S. 508 (Sup. Ct. 1894); Franck v. Stout, 139 Wis. 223, 120 N.W. 867 (Sup. Ct. 1909). Here, it is conceded that Janay had no such notice.)
*592 A liability insurance policy, had it issued as called for by paragraph 3(f), would have required the insurance company to provide and pay for Janay's defense of the Robinson action as well as to pay the judgment entered in Robinson's favor against Janay, and this without any necessity that Janay first pay the judgment. The policy called for was one insuring against liability, not a policy of indemnity. See Viddish v. Hartford Accident and Indemnity Co., 41 N.J. Super. 221, 225 (App. Div. 1956).
Janay has not sought recovery of the expenses of defending the Robinson action; all their cross-claim seeks is recovery of the amount of the Robinson judgment, $14,500 plus costs of $250. Janay's right to recover that sum was established by proof of the entry of the Robinson judgment against them, Viddish v. Hartford Accident and Indemnity Co., supra, even if they had not also proved, as we find they did, that they had paid $14,750 in satisfaction of the judgment. The fact that, as noted above, the judgment was entered not only against Janay but also against two corporations, Janay Electric Company and Bergenwood Construction Co., will be of significance only if Rich Lan, after reimbursing Janay, institutes, as subrogee of Janay's rights, an action against the two corporations for contribution under the Joint Tortfeasors Contribution Law, N.J.S. 2A:53A-1 et seq.

The Rich Lan Cross-Appeal
While the trial court ruled that Rich Lan was entitled to recover the $10,000 deposited by it under the contract for the sale of the premises because of Janay's delay in installing the Revolvator elevator, it refused to award interest thereon because no demand for interest was embodied in the pretrial order or in counsel's opening statement to the trial court. Whether those omissions were fatal despite the fact that Rich Lan's counterclaim concluded with a general prayer for judgment on both counts thereof "together with interest and costs of suit," need not be resolved, for we are satisfied *593 that in the circumstances of this case, interest should not be awarded.
The contract did not stipulate for interest; Rich Lan's right to call a default for the delay in installation of the elevator was justifiably disputed; and by reason of what has transpired Rich Lan, as tenant, now has the benefit of a Revolvator elevator not called for under its lease. In those circumstances, "considerations of justice and fair dealing," John Agnew Co. v. Paterson Bd. of Education, 83 N.J. Eq. 49, 67 (Ch. 1914), affirmed o.b. 83 N.J. Eq. 336 (E. & A. 1914), mandate that interest be denied. See Jardine Estates, Inc. v. Donna Brook Corp., 42 N.J. Super. 332, 341 (App. Div. 1956).
The judgment in favor of Rich Lan on the cross-claim of Janay is reversed and the cause remanded to the trial court with directions that judgment be entered thereon in Janay's favor for $14,750. The judgment in favor of Rich Lan on its counterclaim, from which it has appealed, is affirmed. Costs on the appeals are awarded to Janay.