**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1416-20

PATRICK GRAY,

     Plaintiff,

v.

THOMAS CHAMORO, THOMAS
GARCIA-GARCIA, a/k/a
TOMAS GARCIA, CITY LINE
CAR WASH OF NEW JERSEY,
LLC, CITYLINE GASOLINE, LLC,
MARK GENOFSKY and/or
MARK TARNOFSKY, SUSAN M.
WILKINS, LARRY T. CORP., d/b/a
CITY LINE, KLEEN KAR, LLC,
d/b/a CITY LINE, NOAM
EISENBERG, HIGH POINT
PROPERTY AND CASUALTY
INSURANCE COMPANY, and
PLYMOUTH ROCK ASSURANCE,

     Defendants,

and

AVI STEIN,

     Defendant-Respondent,

and

DINO DIAMANTE NICOLETTA,

     Defendant-Appellant.

_____

Submitted March 7, 2022 – Decided March 23, 2022

Before Judges Sumners and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3029-17.

Stuart A. Wilkins, attorney for appellant.

Melito & Adolfsen, attorneys for respondent (Steven I. Lewbel, on the brief).

PER CURIAM

In an August 16, 2019 opinion and order, the court granted defendant Avi Stein summary judgment finding co-defendant Dino Diamante Nicoletta breached a contractual lease obligation by failing to obtain a $3,000,000 general liability policy naming Stein as an additional insured. Nicoletta appeals from the summary judgment order, as well as a December 17, 2020 order entered following a bench trial awarding Stein $47,223.26 in damages allegedly resulting from Nicoletta's breach of the lease. Based on our review of the record in light of the applicable legal principles, we affirm the summary judgment

2           A-1416-20

order, vacate the order awarding Stein damages, and remand for further proceedings.

I.

Stein is the co-owner of a car wash. In 2012, he leased the car wash to Nicoletta. The lease required that Nicoletta purchase and maintain a $3,000,000 general liability policy for the car wash, with Stein named as an additional insured.

In 2014, Nicoletta ceased operating the car wash and sold his interest in it to Mark Tarnofsky, who thereafter operated the car wash under Kleen Kar, LLC. When he transferred his interest in the car wash to Tarnofsky, Nicoletta also entered into a rider to the 2012 lease with Stein; the rider stated Nicoletta's sale of his interest in the car wash did not extinguish his obligations under the lease. Thus, Nicoletta's obligations under the lease, including the requirement he maintain the $3,000,000 general liability policy, continued thereafter.

In 2017, plaintiff Patrick Gray was pinned between two cars in the carwash by a vehicle driven by a Kleen Kar employee who was not a licensed driver. Gray's injuries resulted in the amputation of both his legs. In a complaint that was amended numerous times, Gray asserted negligence claims against Stein, Nicoletta, Kleen Kar, Tarnofsky, and others.

A-1416-20

Stein learned the general liability policy Nicoletta was required to maintain pursuant to the 2012 lease had lapsed prior to the accident in which Gray was injured. Kleen Kar, which operated the car wash at the time of the accident that injured Gray, had a United Specialty Insurance Company (USIC) commercial lines policy in effect when the accident occurred.

Stein sought a defense and indemnification from USIC under the Kleen Kar policy, but USIC initially denied the request. Stein retained Melito & Adolfsen (M&A), a New York law firm, to assist him in obtaining a defense and indemnification from USIC. The law firm obtained USIC's agreement to provide Stein a defense in the Gray litigation, and USIC assigned Stein counsel to defend him in Gray's lawsuit.

M&A attorney Steven I. Lewbel, who is admitted to practice law in New Jersey, also represented Stein in the Gray matter. As part of that representation, Lewbel prosecuted Stein's cross-claim against Nicoletta for breach of the lease agreement based on Nicoletta's failure to maintain the general liability policy.

Prior to, and during the Gray lawsuit, M&A partner Louis G. Adolfsen, who is not admitted to practice law in New Jersey, provided advice to Stein concerning insurance coverage issues and other matters related to the Gray

4

lawsuit, and conferred and communicated with the USIC-assigned counsel for Stein concerning the lawsuit.

M&A also represented Stein in a declaratory judgment action filed by USIC in the United States District Court for the District of New Jersey concerning insurance coverage issues related to the Gray lawsuit. USIC sought a declaratory judgment it had "no duty to defend or indemnify" Stein or his co-defendants in the Gray lawsuit, "or in the alternative, that . . . [USIC's] obligation to indemnify is limited to a $15,000 liability limit." That litigation was resolved with an agreement USIC would provide Stein with a defense in the Gray lawsuit and $15,000 in indemnity coverage under the Kleen Kar policy.

Represented by another law firm, Stein also filed a landlord-tenant complaint against Nicoletta and Kleen Kar in March 2019 for possession of the car wash property based on Nicoletta's breach of the lease requirement that he maintain the general liability policy. The complaint was later dismissed with prejudice.

In an August 16, 2019 opinion and order, the court in the Gray lawsuit decided a series of summary of judgment motions. Pertinent here, the court granted Stein's motion—filed on his behalf by USIC-assigned defense counsel—

for summary judgment dismissing Gray's complaint. Thus, the Gray litigation against Stein ended with the entry of the court's order.[1]

The court also granted Stein's motion, made by Lewbel, for summary judgment on his cross-claim against Nicoletta for breach of the lease by failing to maintain the $3,000,000 general liability policy. The court ordered a trial "to determine the amount of damages [Stein] incurred" as a result of Nicoletta's breach of the lease.

At the ensuing bench trial, Stein sought damages for the attorney's fees and costs billed by M&A that he claimed were incurred as a result of Nicoletta's failure to maintain the general liability insurance policy. Stein testified the $15,000 in coverage provided under the USIC policy was inadequate given the nature of Gray's injuries, and therefore he required M&A's representation to protect his personal assets. Stein also testified he could not depend on USIC-assigned counsel to protect his personal interests in the Gray lawsuit, and he required M&A's assistance in the USIC federal court declaratory judgment action as well.

---

[1] Gray's lawsuit later settled. The settlement did not require any contribution from Stein. USIC paid $1,000,000 toward the global settlement of the action.

A-1416-20

Adolfsen testified concerning the services he and Lewbel provided Stein. Adolfsen testified the Kleen Kar $1,000,000 policy included an exception limiting coverage to $15,000 where, as here, liability stemmed from a motor vehicle accident involving a Kleen Kar employee who was an unlicensed driver. Adolfsen also explained that he reviewed and analyzed USIC's initial letter to Stein denying coverage, and he prepared a letter to USIC for the purpose of obtaining Stein a defense and indemnity coverage under the Kleen Kar policy. Following its receipt of Adolfsen's letter, USIC agreed to provide a defense to Stein in Gray's lawsuit and assigned counsel to represent him.

Adolfsen also explained M&A represented Stein in the federal declaratory judgment action brought by USIC and the firm represented Stein on his motion for summary judgment on his breach of contract cross-claim against Nicoletta. Adolfsen testified it was not USIC-assigned counsel's responsibility to prosecute Stein's cross-claim for breach of contract against Nicoletta. Adolfsen further explained he attended Stein's deposition in the Gray lawsuit, he attended a mediation session in the lawsuit, and his firm was otherwise involved in the mediation. Adolfsen also testified he had telephone communications with Nicoletta's counsel.

A-1416-20

On cross-examination, Adolfsen acknowledged "there was not a lot of activity in the" declaratory judgment action, and the majority of M&A's billing was for work done concerning Gray's lawsuit. He explained "it wasn't so much that [he] was in the [s]tate [c]ourt action" because Stein had an USIC-assigned defense lawyer. Adolfsen explained he talked with Stein during the Gray lawsuit and provided legal advice, and he indicated that he would not be surprised if he billed up to $30,000 of the $67,000 Stein sought in damages for doing so.

Adolfsen testified he was not admitted pro hac vice in the Gray lawsuit, and he admitted that in 2014 he was placed on the New Jersey Supreme Court's pro hac vice ineligibility list. Adolfsen explained he had been previously admitted pro hac vice in New Jersey but stopped paying the annual pro hac vice fee when he was no longer involved in cases in the state.

Adolfsen testified he was aware he needed to be admitted pro hac vice to provide "legal advice in the State of New Jersey in a State Court action," but claimed he "wasn't providing . . . legal advice" to Stein. Adolfsen said, he "was not involved in the [s]tate [c]ourt action. Steve[n Lewbel] was involved because [he] was not admitted."

Adolfsen further testified he "never went to a conference in the State action. [He] never appeared in the courthouse," and, contradicting his prior

testimony, he stated, "I never went to a deposition." He characterized his work as "being involved with dealing with [his] clients, and their concerns, the coverage actions, what things meant." He stated he "would talk to . . . [USIC-assigned counsel] from time to time, [asking] how's the case going? . . . [He'd then] try to explain to [Stein] what [USIC-assigned counsel] said." He characterized his participation as follows:

> I was sitting in my office in New York. I wasn't doing anything in New Jersey at all. As far as I was concerned, my clients were in Israel or New York, and I was talking to them on the phone about things and consulting with two New Jersey lawyers about what's going on.

Adolfsen explained that Stein's cross-claim for breach of the lease was "a whole other issue that ha[d] nothing to do with the insurance company defending" Stein. Adolfsen acknowledged USIC-assigned counsel filed the cross-claim against Nicoletta on Stein's behalf as part of Stein's answer to Gray's complaint.

Adolfsen testified M&A billed for an appearance at the mediation despite the fact Stein had been dismissed from the case already. According to Adolfsen, Lewbel went to the mediation to ensure that any agreement included "something to the effect that the mediation had no effect on our claims for breach of contract."

9

The court reserved decision on Stein's damages claim and directed that the parties file post-trial briefs.[2]   In his post-trial submission, Stein claimed $74,893.08 in damages.

On December 16, 2020, the court issued an order and opinion, awarding Stein $47,223.26 in damages.  The court rejected Nicoletta's argument that Stein could not recover fees for Adolfsen's services because Adolfsen, who is not licensed to practice in New Jersey, "engaged in the unauthorized practice of law and is therefore not entitled to attorney's fees."

The court explained it awarded fees based on its finding, made in granting Stein summary judgment on his cross-claim, that Stein was entitled to damages that "flow from" Nicoletta's breach of the lease by failing to maintain the requisite general liability policy.  The court then determined the "damages which 'flow[]' from Nicoletta's failure to procure insurance are the attorneys' fees Stein incurred to defend Gray's personal injury claims."

---

[2]  The court also reserved decision on two motions for directed verdicts made by Nicoletta during the trial.  We do not address the motions because Nicoletta does challenge the court's disposition of them on appeal.  See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (holding that issue not briefed on appeal is deemed waived); Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (same).

The court further explained that it reviewed certifications from Lewbel detailing the M&A fees and costs Stein sought as damages, and the court noted it considered Nicoletta's objections to the alleged damages. The court detailed its determination as to which M&A fees and costs it deemed constituted damages and those fees and costs that did not constitute recoverable damages.

The court found Stein was not entitled to damages for:

> a. fees and costs incurred in connection with the landlord-tenant proceeding because the action did not relate to the insurance coverage issue which was the subject matter of the trial;
>
> b. fees and costs incurred for Adolfsen's preparation of his pro hac vice admission in the federal declaratory judgment action because Stein could have reasonably hired a New Jersey attorney to represent him in that action;[3]
>
> c. fifty percent of the fees charged for phone consultations between Stein and Adolfsen because "most of the conversations were not in themselves the conveyance of 'legal advice' but rather simply reassuring" Stein that M&A gave the "matter the time and attention it required";
>
> d. any fees for Adolfsen associated with his appearance as a witness at the damages trial; and

---

[3] It appears Adolfsen prepared an application for pro hac vice admission in the federal declaratory judgment action. The trial judge disallowed any fees or costs associated with that application.

A-1416-20

e. fees and costs incurred following entry of the August 16, 2019 order granting Stein summary judgment dismissing Gray's complaint against him.[4]

The court found Stein was entitled to damages all other fees and costs billed by M&A, including fees and costs for:

a. communications with, and preparation of correspondence to, USIC for the purpose of obtaining coverage and defense for Stein under the Kleen Kar policy;

b. legal services provided in connection with the federal declaratory judgment action brought by USIC;

c. Adolfsen's communications and consultations with Stein regarding insurance coverage issues, the federal declaratory judgment action, and the Gray lawsuit;[5]

d. Lewbel's representation of Stein in the Gray lawsuit, including his prosecution of the cross-claim against Nicoletta for breach of the lease; and

e. attorney's fees for sixteen hours associated with the preparation for, and attendance at, the damages trial.

---

[4] As we explain, the court found Stein was entitled to damages for fees charged by M&A following the August 16, 2019 summary judgment order, but only for time spent preparing for, and attending, the damages trial.

[5] As noted, the court limited its award of damages to fifty percent of the fees associated with Adolfsen's consultations with Stein.

A-1416-20

Based on those findings, the court later sifted through M&A's billing entries, and applied what it determined was a reasonable hourly rate to the number of hours expended on tasks that fell within the categories of fees and costs it had deemed constituted compensable damages.

The court entered a final order directing Nicoletta pay Stein $47,223.26 in damages. Nicoletta appealed from the order granting summary judgment on Stein's cross-claim, and the order and judgment awarding Stein damages.

II.

Although his notice of appeal reflects an appeal from the August 16, 2019 order granting Stein summary judgment on his breach of contract cross-claim, Nicoletta's merits brief does not include any argument challenging the order. We therefore deem that Nicoletta waives any claim the summary judgment order was entered in error, and we affirm the order without any further discussion. See Sklodowsky, 417 N.J. Super. at 657; Jefferson Loan Co., 397 N.J. Super. at 525 n.4.

In his challenge to the court's order awarding damages, Nicoletta argues the court failed to address or apply the standard applicable to an award of damages based on a breaching party's failure to procure insurance, and the court failed to make any findings establishing a causal connection between the breach

of the lease and its determination of the damages. Nicoletta asserts a damage award must only place a party in the same situation they would have been had there not been a breach of a contract, and the court's damages award places Stein in a better position than he would have been had the lease obligation to obtain insurance not been breached.

Nicoletta argues the court erred by awarding attorney's fees and costs to Stein because there is no statute, rule, or contract provision authorizing the award of attorney's fees as damages for Stein's breach of contract claim. Nicoletta relies on "the American Rule, which prohibits a litigant from recovering counsel fees from [an adverse party] when the fees were incurred in an action to establish that [party's] liability." In re Estate of Lash, 169 N.J. 20, 30 (2001). He claims the court erred by ignoring the general principle that "New Jersey generally disfavors the shifting of attorneys' fees," unless the recovery of those fees is "expressly provided for by statute, court rule, or contract." Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 440 (2001). And he asserts the court's award of damages to Stein violates the American Rule and does not fall within any exception to the rule because no statute, rule, or contract authorizes the attorney's fee damages award here.

14

Nicoletta's arguments ignore that the trial court correctly relied on an exception to the American Rule permitting "an allowance of reasonable counsel fees where the incurring thereof is a traditional element of damages in a particular action." Estate of Lash, 169 N.J. at 31 (quoting Pressler, Current N.J. Court Rules, cmt. 2.10 on R. 4:42-9 (2000)); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 2.9 on R. 4:42-9 (2021) (explaining Rule 4:42-9 "does not preclude an allowance of reasonable attorney's fees if the incurring thereof is a traditional element of damages in a particular cause of action"). "A plaintiff has the right to recover attorney's fees incurred in other litigation with a third person, if the plaintiff became involved in that litigation as a result of a breach of contract or tortious act by the present defendant." Ibid. (quoting 22 Am. Jur.2d Damages § 618 (1988)); see Donovan v. Bachstadt, 91 N.J. 434, 448 (1982) (awarding attorney's fees in the form of damages due to a party's breach of contract).

Where a party establishes a breach of contract, the breaching party, "is liable for all of the natural and probable consequences of the breach of that contract." Totaro, Duffy, Cannova & Co. v. Lane, Middleton & Co., 191 N.J. 1, 13 (2007) (quoting Pickett v. Lloyd's, 131 N.J. 457, 474 (1993)). The purpose of awarding damages is "to put the injured party in as good a position as . . . if

performance had been rendered." Ibid. (alteration in original) (quoting Donovan, 91 N.J. at 444). In addition, the damages "must be a reasonably certain consequence of the breach although the exact amount of the loss need not be certain." Donovan, 91 N.J. at 445.

Where, as here, a party breaches a contractual obligation to procure insurance coverage, the measure of damages is "the amount that would have been due under the policy provided it had been obtained." Robinson v. Janay, 105 N.J. Super. 585, 591 (App. Div. 1969) (quoting 43 Am. Jur. 2d. Insurance § 174 (1982)). See also Carvalho v. Toll Bros. & Developers, 278 N.J. Super. 451, 466 (App. Div. 1995) (holding a third-party beneficiary of a contract requiring they be included in a general liability policy as an additional insured was "entitled to recover its loss sustained by reason of the breach" in "the amount of coverage that would have been available to it under the policy if [the breaching party] had complied with its contract obligation"). As we explained in Antenucci v. Mr. Nick's Mens Sportswear, where a tenant breaches a contractual obligation to procure insurance providing coverage for the landlord, the tenant is "liable for the losses sustained by the landlord flowing from that breach." 212 N.J. Super. 124, 131 (App. Div. 1986).

A-1416-20

Contrary to Nicoletta's claim the court did not identify the standard it utilized to determine Stein's damages, in its written opinion granting Stein summary judgment on his cross-claim for breach of contract, the trial court relied on Robinson and found that because Nicoletta failed to procure the general liability policy, he was liable for Stein's attorney's fees that would have otherwise been covered by the insurance policy Nicoletta was obligated to obtain under the lease. The court explained "Stein's damages flow from the failure of Nicoletta to procure insurance," and ordered a trial on Stein's damages resulting from Nicoletta's breach of the lease. And, in its opinion following the damages trial, the court declared, in accordance with the Robinson standard, the damages that flowed from the breach "are the attorney's fees Stein incurred to defend Gray's personal injury claims until" entry of the summary judgment order dismissing Gray's complaint against Stein.

The evidence at trial established Nicoletta let a $3,000,000 general liability policy that included Stein as an additional insured lapse prior to Gray's accident. Stein did not introduce the policy in evidence at trial, and thereby hampered the court's ability to define precisely what would have covered by the policy if Nicoletta had not breached the agreement. See Cromartie v. Carteret Sav. & Loan, 277 N.J. Super. 88, 98-99 (App. Div. 1994) (utilizing a lapsed fire

insurance policy introduced in evidence to establish the non-breaching party's entitlement to damages under the <u>Robinson</u> standard). In his failure to introduce the policy as the benchmark for a determination of damages under the <u>Robinson</u> standard, Stein rendered it difficult for the trial court, and this court, to apply that standard.

Nonetheless, measured against the <u>Robinson</u> standard as correctly articulated by the trial court, we are convinced the court erred in its determination of Stein's damages. That is because the court recognized the <u>Robinson</u> standard as the benchmark, but then did not correctly apply it.

The parties do not dispute the general liability policy Nicoletta failed to maintain would have afforded Stein a defense in Gray's lawsuit and $3,000,000 in indemnity coverage for Gray's personal injury claims. Under <u>Robinson</u>, Stein was therefore entitled to damages for the fees and costs for the defense and indemnity he was denied in the absence of the policy required under the lease.

Stein did not suffer any damages due to the absence of the indemnity coverage that would have otherwise been provided by the general liability policy because he was granted summary judgment on Gray's claims and no damages verdict was returned against him in the Gray lawsuit. Stein also did not suffer damages in the form of the absence of a defense to Gray's claims because USIC

18

provided assigned counsel to Stein, the assigned counsel represented Stein in the Gray lawsuit and, as it turned out, the assigned counsel obtained summary judgment in Stein's favor resulting in the dismissal of Gray's claims against him.

We agree, however, with the trial court's implicit finding that Nicoletta's failure to maintain the $3,000,000 policy, and the coverage afforded to Stein under USIC's more limited policy, necessitated Stein's retention of personal counsel at his own expense to address his exposure for a damages award in the Gray lawsuit over and above whatever coverage was to be provided under the USIC policy. Stein would not have required the retention of such counsel to protect his personal interests in Gray's lawsuit against him, at least to address his exposure for a damage award against him in excess of the USIC coverage and up to $3,000,000, but for Nicoletta's breach of the lease.

For those reasons, we are convinced the court correctly determined under the Robinson standard that Stein was entitled to recover as damages the fees he incurred for Lewbel's representation of him as his personal counsel in the Gray lawsuit through the date of the court's August 16, 2019 order granting Stein summary judgment on Gray's claims against him. We recognize some of those fees were incurred for the prosecution of Stein's motion for summary judgment on his cross-claim against Nicoletta, but Stein is entitled to those fees as well

because the cross-claim was asserted in the answer filed by defense counsel assigned by USIC, and prosecution of the motion was therefore required by necessity in Gray's lawsuit. Thus, we conclude the trial court correctly determined Stein is entitled to the fees and costs associated with Lewbel's representation of him in the Gray lawsuit through dismissal of Gray's claims on August 16, 2019.

The court, however, erred by awarding Stein damages for M&A's involvement in, and provision of consultation and advice concerning, coverage issues under the USIC policy. The trial record lacks any evidence the legal services associated with addressing coverage issues concerning the USIC policy, and obtaining coverage under the policy, would have been provided under the general liability policy Nicoletta failed to obtain as required under the lease. See Robinson, 105 N.J. Super. at 591; Cromartie v. Carteret Sav. & Loan, 277 N.J. Super. at 99.

Moreover, Stein would have required M&A's services to address and litigate issues related to coverage under the USIC policy even if Nicoletta had obtained the general liability policy. That is because Stein was entitled to whatever insurance was available, including the coverage under the USIC policy, in addition to what would have been the coverage under the policy

required under the lease. Additionally, given the nature of Gray's catastrophic injuries, it can be reasonably inferred Stein would have taken every step required to maximize the insurance coverage available to him, including a diligent pursuit of whatever coverage was available under the USIC policy, such that he would have employed counsel to address and litigate coverage issues under the USIC policy even if the policy required under the lease was in place.

Stein failed to prove Nicoletta's breach of the lease caused him to incur M&A's fees related to the USIC policy because those fees would not have been covered had Nicoletta obtained the policy required under the lease. For that reason, the court erred in awarding as damages fees and costs associated with M&A's services related to Stein's coverage under the USIC policy, including M&A's communications with USIC and its counsel concerning coverage issues, M&A's consultations with USIC, Stein, and others concerning the USIC policy and coverage issues related to it, and M&A's services related to the federal declaratory judgment action. Again, Stein failed to present evidence the costs of all those services would have been covered if the general liability policy required under the lease had been maintained by Nicoletta, and therefore they do not constitute compensable damages for his breach of the lease.

Robinson, 105 N.J. Super. at 591; Cromartie v. Carteret Sav. & Loan, 277 N.J. Super. at 99.

For those reasons, the court erred by awarding as damages the fees or costs for any services provided by Adolfsen. As he explained during his trial testimony, Adolfsen did not participate in the Gray lawsuit, which was handled exclusively by Lewbel. Adolfsen's services were directed solely to coverage issues related to the USIC policy, including M&A's litigation of the declaratory judgment action. To the extent any services Adolfsen provided might be argued to constitute services directly in defense of the claims in Gray's lawsuit, they are disallowed as damages because the record shows Lewbel, and not Adolfsen, was Stein's personal counsel in the lawsuit, and, as noted, Adolfsen disavowed providing representation of Stein in the lawsuit. For the reasons we have explained, the fees and costs associated with Adolfsen's services are not compensable damages for Nicoletta's breach of the lease. Thus, none of the fees and costs associated with Adolfsen's representation of Stein constituted recoverable damages on Stein's cross-claim for breach of the lease.[6] The court erred by finding otherwise.

---

[6] It is therefore unnecessary to decide whether the court correctly rejected Nicoletta's claim Adolfsen could not properly collect fees from Stein based on

The court also erred by finding Stein was entitled to damages for the sixteen hours of M&A's time in preparation for, and attendance at, the damages trial. To be sure, those fees would not have been covered by the general liability policy had Nicoletta not breached the lease, see Robinson, 105 N.J. Super. at 591, and neither the court nor Stein point to any statute, court rule, or contractual provision supporting the award of those fees, see Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 385 (2009). We find no support in the law for the court's determination the fees for those services are compensable as damages for Nicoletta's breach of the lease.

We therefore vacate the December 16, 2019 final order and judgment awarding Stein $47,223.26 in damages and remand for the court to recalculate the damages and enter an appropriate final order. The court shall consider Lewbel's certifications of services previously provided to the trial court,

---

Nicoletta's contention Adolfsen's provision of the services constituted the unlicensed practice of law in the State of New Jersey. See Slimm v. Yates, 236 N.J. Super. 558, 564 (Ch. Div. 1989) ("Recovery of compensation for legal services by one not authorized to practice law will not be permitted by our courts."). We conclude that even if Adolfsen could properly charge fees for the services provided, the fees associated with his services are not recoverable as damages because Stein failed to present evidence the fees would have been covered by the general liability policy Nicoletta was required to maintain under the lease. See Robinson, 105 N.J. Super. at 591; Cromartie, 277 N.J. Super. at 98-99.

A-1416-20

consider argument from counsel, and award as damages M&A's fees and costs associated with only Lewbel's representation of Stein in the Gray lawsuit through entry of the August 16, 2019 summary judgment order. All other fees and costs associated with M&A's representation of Stein shall not be included as damages in the final order and judgment.

In sum, we affirm the court's August 16, 2019 order granting Stein summary judgment on his cross-claim against Nicoletta for breach of the 2012 lease. We vacate the December 16, 2019 order and judgment awarding Stein damages in the amount of $47,223.26, and remand for further proceedings in accordance with this opinion.

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1416-20